606 A.2d 609

Angelo F. LAURITO, Petitioner,

v.

**PUBLIC SCHOOL EMPLOYES' RETIREMENT BOARD, Respondent.**

Commonwealth Court of Pennsylvania.

Argued Feb. 3, 1992.

Decided March 23, 1992.

R.L. Pawlowski, for petitioner.

Susan Ray Kempski, for respondent.

Before PALLADINO and KELLEY, JJ., and SILVESTRI, Senior Judge.

KELLEY, Judge.

Dr. Angelo Laurito appeals from a decision of the Public School Employes' Retirement Board (board) which refused to adopt a hearing examiner's recommendation to include his salary increase for the 1985–1986 school year for purposes of computation of retirement benefits.

The relevant facts as found by the board can be summarized as follows. Laurito retired, effective June 30, 1986, with credit for over 42 years of service with the Northern Cambria School District (school district). During his last 20 years of service he served as an elementary-middle school principal in the school district.

Laurito's annual salary was negotiated each year with the school district. His salary for the 1984–1985 school year had been $32,600. On July 25, 1985, at a special meeting, the school board awarded Laurito a $16,000 "salary adjustment" resulting in setting his salary for the 1985–1986 school year at $48,600. The school board's minutes of July 25, 1985 reflect approval of the $16,000 increase for the 1985–1986 school year. In addition, the same minutes also reflect approval of a leave of absence for Laurito for the 1985–1986 school year, as well as acceptance of Laurito's resignation for retirement purposes effective July 1, 1986.

Based upon information provided to the Public School Employes' Retirement System (PSERS) by the school district, PSERS notified Laurito, that the additional payment of $16,000 did not constitute compensation for retirement

purposes.[1]  Therefore, the $16,000 was not included in the final average salary calculation used in computing Laurito's retirement benefits.

Laurito appealed this determination to the board for a hearing on the issue of whether the $16,000 "salary adjustment" constituted compensation for retirement purposes. After an administrative hearing, the hearing examiner recommended that Laurito's "final average salary" should be recomputed to include the $16,000 salary adjustment awarded to him for the school year of 1985–1986.[2]

The board issued an adjudication rejecting the hearing examiner's recommendation, and concluded that the claimed salary adjustment was a severance payment which may not be included in compensation for retirement purposes.

On appeal to this court, Laurito's only contention is that we adopt the hearing examiner's findings of facts and conclusions of law, because to do otherwise would unfairly discriminate against Laurito as compared to other similarly situated retirees throughout the state.  We find this argument unpersuasive and lacking any support in the law.

1.  "Compensation" as defined at 22 Pa.Code § 211.2:
Excludes any bonus, severance payment or any other remuneration or similar emoluments received by a school employe during his school service not based on the standard salary schedule for which he is rendering service.  It shall exclude payments for unused sick leave, unused vacation leave, bonuses for attending school seminars and conventions, special payments for health and welfare plans based on the hours employed or any other payment or similar emoluments which may be negotiated in a collective bargaining agreement for the express purpose of enhancing the compensation factor for retirement benefits.

2.  The hearing examiner concluded as follows:
    1.  Final average salary includes a bonafide salary increase, even if such increase is awarded while a member is on leave of absence, where the increase is not contingent upon termination of service and where the increase provides the member with a salary comparable to that received by persons in a similar position with like qualifications and experience.
    2.  A salary adjustment is allocable to the year of receipt.
    3.  Claimant's increase must be considered as a salary increment allocable to the 1985/86 school year.

On appeal from a final adjudication of an administrative board, our scope of review is limited to a determination of whether the board committed an error of law, whether constitutional rights were violated, or whether necessary factual findings are supported by substantial evidence. *Finnegan v. School Employes' Retirement Board,* 126 Pa.Commonwealth Ct. 584, 560 A.2d 848 (1989).

The board made fourteen findings of fact and concluded in relevant part as follows:

5. The resolutions adopted and actions taken by the School Board at its special meeting of July 25, 1985, affecting Laurito constituted a severance agreement or 'package' whose various terms must be presumed related and interdependent, subject to possible rebuttal of such a presumption by competent evidence.

6. The evidence as a whole is insufficient to establish that Laurito's compensation for the 1985–1986 school year, after upward adjustment from $32,600 to $48,600, was in accord with scheduled or customary salary scale within the School District for personnel with the same educational and experience qualifications who were not terminating school service.

. . . .

8. Discussions between Laurito and members of the School Board as to whether to characterize the additional payment as a bonus or part of permanent salary, an admission on Laurito's part that the reason for the adjustment could not be stated publicly, and other testimony from him that after discussion 'on the QT' School Board members knew what they had to do, constitute substantial evidence of efforts to veil the purpose of the additional payment and warrant the conclusion that the purpose or principal purpose of the payment was to enhance the final average pay factor for Laurito's retirement benefits.

Proper consideration of the issue before us requires the application of certain statutory definitions found in the Public School Employees' Retirement Code (Code), 24 Pa.

C.S. §§ 8101–8534. Section 8102 of the Code defines the following terms:

> **'Compensation.'** Pickup contributions plus any remuneration received as a school employee excluding refunds for expenses incidental to employment and *excluding any severance payments.*
>
> **'Final average salary.'** The highest average compensation received as an active member during any three nonoverlapping periods of 12 consecutive months with the compensation for part-time service being annualized on the basis of the fractional portion of the school year for which credit is received; except, if the employee was not a member for three such periods, the total compensation received as an active member annualized in the case of part-time service divided by the number of such periods of membership; and, in the case of a member with multiple service credit, the final average salary shall be determined by reference to compensation received by him as a school employee or a State employee or both.
>
> **'Severance payments.'** Any payments for unused vacation or sick leave and any *additional compensation contingent upon retirement* including payments in excess of the scheduled or customary salaries provided for members within the same governmental entity with the same educational and experience qualifications who are not terminating service.

24 Pa.C.S. § 8102 (emphasis added).

At argument, Laurito contended that although his salary adjustment may seem disproportionate to prior increases, the increase merely placed him at a comparable level of salary with others having like responsibilities, experience, and length of service. Despite this contention, we find the record devoid of any evidence that Laurito's salary increase was customary for an individual of like experience within the school district. For example, Laurito provided the following testimony regarding the salary of his replacement:

Q. Do you know what his opening salary was?

A. I think—I even helped, he had even come to ask me what I thought would be an acceptable salary. I thought it was $27,000.

Q. You mean that's what was offered him or that's what you thought was acceptable?

A. That's what he accepted, I think. I think he was making as a teacher $24,000 something, a little below $25,000.

Reproduced Record (R.) at 23a.

■■■ The board, which is charged with execution and application of the Code and whose interpretation should not be overturned unless it is clear that such construction is erroneous, *Panko v. Public School Employees' Retirement System*, 89 Pa.Commonwealth Ct. 419, 492 A.2d 805 (1985), contends that the General Assembly, based upon the statutory definitions of "compensation" and "severance payments", intended to disallow payments which may represent an artificial inflation of compensation for the purpose of enhancing retirement. Furthermore, the board submits that the school board's actions of July 25, 1985 must be regarded as a single package tantamount to a severance agreement with Laurito. We agree.

On direct examination, Laurito testified as to his understanding of the purpose behind the salary adjustment:

Q. And when this action was done by the Board, what was their intention, why did they raise your salary?

A. They didn't really come out and tell me.

Q. Did they state why they raised the salary to you?

A. I don't think they could publicly. So I think it was all on the QT, whatever it was.

Q. Whatever they decided?

A. Yes.

R. at 41a.

We find especially persuasive the observation made by the board that the $16,000 payment in the final year of service provided a mechanism for the school district to recognize Laurito's devoted service, as well as to remedy

the perceived inequity of a below-average salary throughout a working lifetime, by effectuating an inflated final salary for purposes of retirement benefits.

Laurito in fact argues in his brief that it is unfair for him to accept less retirement benefits than other similarly situated retirees throughout the state, when he devoted his entire career to a financially deficient school district. We believe the Code definition of severance pay dictates that the proper comparison group in this instance would be individuals in the same school district as Laurito.

Based on our review of the record, we believe substantial evidence existed to allow the board to conclude that the purpose of the $16,000 payment was to enhance Laurito's retirement benefits.

Accordingly, we affirm the determination of the board.

## ORDER

NOW, this 23rd day of March, 1992, the order of the Public School Employes' Retirement Board, dated March 8, 1991, is hereby affirmed.