620 A.2d 639

William K. DOWLER, Petitioner,

v.

**PUBLIC SCHOOL EMPLOYES' RETIREMENT BOARD, Respondent.**

Commonwealth Court of Pennsylvania.

Argued Nov. 19, 1992.

Decided Jan. 27, 1993.

John S. Carnes, Jr., for petitioner.

Kathleen E. Boyle, Asst. Counsel, for respondent.

Before CRAIG, President Judge, SMITH, and NARICK, Senior Judge.

CRAIG, President Judge.

In this case we are asked to determine whether a payment of $14,854.08 to the claimant, William K. Dowler, is a severance payment or compensation under the Public School Employees' Retirement Code, Act of Oct. 2, 1975, P.L. 298, *as amended,* 24 P.S. §§ 8101–8104 (the Code). The claimant is appealing an order of the Public School Employes' Retirement Board (board) which rejected the proposed report of a hearing examiner who suggested ruling in favor of the claimant when he appealed from the Pennsylvania State Employee's Retirement System (PSERS), which refused to consider the money as compensation for retirement purposes. We affirm the decision of the board.

Initially, we note that the claimant and the board dispute who the factfinder is in this case. The claimant asserts that the hearing examiner is the final factfinder. The board maintains that it has final factfinding authority. We agree with the board.

Proceedings before the board are governed by the General Rules of Administrative Practice and Procedure, 1 Pa.Code §§ 31.1–35.251 (General Rules). This court has previously addressed the delegation of powers under the General Rules. In *Northwestern Institute of Psychiatry v. Department of Public Welfare,* 99 Pa.Commonwealth Ct. 213, 217–18, 513 A.2d 495, 498 (1986), this court explained that:

Under these procedures the ... agency head can, herself, hold hearings *or* designate that duty to a 'presiding officer.' 1 Pa.Code § 35.123 and § 35.185. When a presiding officer is so designated, as was the hearing attorney in this case, he can be ordered by the [agency head] to prepare, *inter alia,* a *proposed* report. See 1 Pa.Code § 35.202. That report

must contain, *inter alia,* findings of fact and conclusions. 1 Pa.Code § 35.205. Nowhere in these procedures is the hearing attorney given authority to file an order.... Most important for our purposes, nowhere in these procedures is there *any* language which establishes the hearing attorney as the fact finder. (Emphasis in original, footnotes omitted.)

The hearing examiner in the case before us is a "presiding officer" within the meaning of the General Rules, and the board is an "agency head." Nothing in the Code, or in the regulations issued pursuant to the Code, contradicts this portion of the General Rules. 1 Pa.Code § 31.1. Therefore, the hearing examiner is not the factfinder. The board is.

Accordingly, the facts as found by the board are as follows. The claimant was the personnel director at the West Chester Area School District for over seventeen years, before retiring on July 1, 1988. During the first three years of the claimant's employment as the personnel director, he conducted all of the School District's labor negotiations, as well as performing his other duties.

In later years, the School District hired private contractors to conduct labor negotiations. In 1985, the School District hired Metzler Associates and paid it on an hourly, time-expended basis, at rates that varied according to the nature of the tasks it performed. In that year, the School District paid Metzler Associates a fee of $15,900.

On November 17, 1987, the West Chester Area School District Board of Education (Board of Education) and the claimant formed an agreement concerning his retirement. The board made the following findings regarding the agreement:

5. The retirement memorandum provided that Claimant would be placed on a reduced work schedule of two to three days a week, at the discretion of the Superintendent, from January 1, 1988 to July 1, 1988. It was further provided that this period would be fully compensated as if Claimant were working a five-day schedule, and that Claimant's duties would include, but not be limited to, training a

replacement, handling special exceptions, and assisting with negotiations.

6. The retirement memorandum further provided that Claimant's military service would be purchased by the Board of Education on Claimant's behalf, for a sum not to exceed $15,000.00, and that the funds necessary to purchase the said service would be given to Claimant on or about January 1, 1988. Claimant was to deliver to the School District proof of payment of these monies to the Retirement System on or before June 30, 1988.

The board found that at the time the retirement memorandum was created, it was not certain that the claimant would be required to perform any consulting services. However, for the first time in the claimant's work experience, three labor contracts expired at the end of June, 1988, and the School District required the claimant's assistance in negotiating new agreements.

Because the School District did not hire a new director of personnel until May, 1988, the claimant worked full-time as the personnel director from January 1, 1988 until June 30, 1988, and also conducted after-hours negotiations with two of the School District's collective bargaining units. Even after retiring on July 1, 1988, the claimant continued working as a consultant for the School District for twenty working days at a rate of $200 a day plus expenses.

In addition, the School District paid the claimant $14,854.08, with which the claimant purchased retirement credit for his military service. The PSERS concluded that the $14,854.08 was a severance payment and did not include it as part of the claimant's final average salary for the purpose of computing the claimant's retirement compensation.

The claimant appealed the PSERS's final average salary determination, arguing that he did not receive the benefit of his November 17, 1987 agreement with the Board of Education because he was not given the opportunity to work half-time at full pay. According to the claimant, the School District recognized this point and decided to characterize the payment of $14,854.08 as compensation for after-hour negotia-

tion work performed in addition to acting as full-time personnel director. The hearing examiner issued a proposed report on May 2, 1991, recommending that the board include the money in the computation of the claimant's final average salary.

The PSERS filed exceptions to the proposed report of the hearing examiner on May 31, 1991. The PSERS argued, among other things, that the written agreement remains the best indication of the claimant's and the Board of Education's intentions, and that it clearly establishes that the payment is a severance payment.

The board agreed with the PSERS and found that, "[t]he School District paid Claimant the sum of $14,854.08 to purchase retirement credit for his military service." The board rejected the hearing examiner's recommendations and concluded that the money represented a severance payment. The board dismissed the claimant's appeal on March 6, 1992.

The claimant now brings this appeal alleging that the board committed errors of law, fact and due process. The claimant argues that the board's findings of fact do not support the conclusion that the claimant received a severance payment, that the facts are not supported by substantial evidence in the record, and that the claimant was denied due process of law because of the possibility of improper commingling of "prosecutorial/investigative" and adjudicative functions between the PSERS and the board, and because the board failed to review the entire record before reaching its decision.

■ We have a limited scope of review from the final adjudications of administrative boards. We may only determine whether the board committed an error of law, whether constitutional rights were violated, or whether necessary factual findings are supported by substantial evidence. *Finnegan v. School Employes' Retirement Board,* 126 Pa.Commonwealth Ct. 584, 560 A.2d 848 (1989).

■ The Code indicates that the General Assembly wishes to exclude from the computation of employes' final average salary all payments which may artificially inflate compensation

for the purpose of enhancing retirement benefits. *Laurito v. Public School Employes' Retirement Board,* 146 Pa.Commonwealth Ct. 514, 519, 606 A.2d 609, 611. The pertinent statutory definitions for this case are as follows:

"Compensation." Pick-up contributions plus any remuneration received as a school employee excluding refunds for expenses incidental to employment and *excluding any severance payments.*

. . . .

"Final average salary." The highest average *compensation* received as an active member during any three nonoverlapping periods of 12 consecutive months. . . .

. . . .

"Severance payments." Any payments for unused vacation or sick leave and *any additional compensation contingent upon retirement including payments in excess of scheduled or customary salaries* provided for members within the same governmental entity with the same educational and experience qualifications who are not terminating service.

Section 1 of the Code, 24 P.S. § 8102 (emphasis added). In addition, the regulations promulgated under the Code elaborate on the definition of "compensation":

*Excludes any bonus, severance payment or any other remuneration or similar emoluments received by a school employe during his school service not based on the standard salary schedule for which he is rendering service.* It shall exclude payments for unused sick leave, unused vacation leave, bonuses for attending school seminars and conventions, special payments for health and welfare plans based on the hours employed or any other payment or similar emoluments which may be negotiated in a collective bargaining agreement for the express purpose of enhancing the compensation factor for retirement benefits.

22 Pa.Code § 211.2 (emphasis added).

 Whether or not a payment must be considered a severance payment is a question of law. Under the Code, all payments, other than for regular professional salary, which are part of an agreement in which a professional member

agrees to terminate school service by a date certain, are prima facie severance payments. The claimant may rebut a prima facie case only by showing that the payment is in accord with the scheduled or customary salary scale within the School District for personnel with the same educational and experience qualifications who are not terminating service. *See Laurito.*

In the case before us, the board's findings establish, prima facie, that the claimant received a severance payment. The agreement expressly states that its conditions are contingent upon the claimant's retiring on July 1, 1988. In addition, one of the conditions is the payment of money for the purchase of military retirement credits. The agreement reads as follows:

Your request to retire as of July 1, 1988, as stated in your memo of August 7, 1987, has been reviewed by the Board [of Education]. Our primary concern for your long-term ability to continue at your current pace for the next two years without doing irreparable harm to yourself has resulted in the following conditions being implemented *contingent upon your retirement as of July 1, 1988* :

1. You will be placed on a reduced work schedule of two to three days a week, at the discretion of the Superintendent, from January 1, 1988, to July 1, 1988. This period will be fully compensated as if working a five-day schedule. Duties will include, but not be limited to, training a replacement, handling special exceptions, and assisting with negotiations.

2. *The remainder of your military service will be purchased by the Board [of Education] on your behalf, a sum not to exceed $15,000.* The funds to do this will be given to you on or about January 1, 1988, and you shall deliver to the School District proof of payment of these monies to the Pennsylvania State Retirement System on or before June 30, 1988. In return for this you agree to guarantee up to 80 hours of consulting time, on an as needed basis, between the dates of July 1, 1988, and December 31, 1988.

I, William K. Dowler, accept the above conditions, and I shall retire effective July 1, 1988.

/s/ William K. Dowler 11/17/87 (Emphasis added.)

The agreement demonstrates the parties' intention to pay a sum of money, not a part of the claimant's regular salary, upon the claimant's agreeing to retire by July 1, 1988. Therefore, the record contains substantial evidence satisfying the board's required burden of proof to establish a prima facie severance payment.

However, the claimant contends that the actual employment circumstances that developed after November 17, 1987 were significantly different from those anticipated in the written agreement, above. Specifically, three labor agreements simultaneously expired, and the School District did not hire a replacement to fill the claimant's position until May of 1988, causing the claimant to work more hours rather than less. (Although the claimant suggests that the written agreement envisioned a new personnel director being hired early in the school year, the agreement is silent on this matter.) Thus, the claimant desires that we ignore the language of the agreement and concentrate on the events as they "actually occurred."

What actually occurred, according to the claimant, is that he received supplemental income for services beyond the scope of his normal duties. Such income is compensation under the Code, and must be included in the claimant's final average salary. The claimant suggests that his payment is analogous to the $15,900 fee paid to Metzler Associates in 1985, and therefore is in accord with the scheduled and customary salary scale. Also, the School District routinely pays supplemental compensation for employes who perform work beyond their professional teaching or administrative duties, such as athletic coaches.

We are not persuaded. The claimant's comparison with Metzler Associates is not informative because Metzler Associates has never been an employe of the School District subject to its pay scale. Rather, Metzler Associates was paid on an hourly rate that included its expenses. The claimant testified

that he had no expenses for his negotiating work before he retired.

Furthermore, even if the claimant was not paid pursuant to the written agreement, as he contends, he nonetheless received a payment that was not part of his regular salary. He also agreed to retire on July 1, 1988, and did so. And finally, there is no evidence to establish that the claimant's payment is in accord with any customary salary scale within the School District for personnel with the same educational and experience qualification who are not terminating service. The claimant's argument is simply not responsive to the board's prima facie case.

The claimant essentially asks that we re-interpret the same facts he presented to the board, but in his favor. However, this court, "may not substitute its judgment for that of an administrative agency acting within its discretion in the field of its expertise upon substantial evidence...." *Prudential Property and Casualty Insurance Company v. Department of Insurance,* 141 Pa.Commonwealth Ct. 156, 176, 595 A.2d 649, 659 (1991). Therefore, we agree with the board that there is no evidence in the record to rebut the board's finding that the claimant received payment pursuant to an agreement to retire.

The claimant suggests that the board must liberally administer the retirement system in favor of the members of the system. We agree. However, a liberal administration of the retirement system does not permit the board to circumvent the express language of the Code, which does not permit inclusion of a severance payment in the computation of final average salary.

Accordingly, we must affirm the board's order because there is substantial evidence in the record to support the board's findings, which, in turn, support the conclusion of law that the claimant received a severance payment in the amount of $14,854.08. Therefore, we need not address the the board's alternate theory that the claimant was paid on a "fee basis."

Finally, the claimant raises two new issues in this appeal. The claimant suggests (1) that there is the appear-

ance of commingling of "prosecutorial/investigative" and adjudicative functions, because of the relationship between the PSERS and the board, and (2) that the board denied him due process by failing to review the entire record before rendering its decision.

However, the claimant failed to raise these issues before the board. Pennsylvania Rule of Appellate Procedure 1551 states that

[n]o question shall be heard or considered by the court which was not raised before the government unit except (1) Questions involving the validity of a statute ... (3) Questions which the court is satisfied that the petitioner could not by the exercise of due diligence have raised before the government unit.

Additionally, § 703 of the Administrative Agency Law, 2 Pa. C.S. §§ 701–704, prohibits a party from raising questions on appeal that were not raised before the agency.

This court has held that commingling claims may be waived if they are not raised before the administrative board. *Newlin Corporation v. Department of Environmental Resources*, 134 Pa.Commonwealth Ct. 396, 403, 579 A.2d 996, 1000 (1990). The claimant in this case has not offered a convincing reason for failing to raise his claim before the board.[1] Most, if not all, of the claimant's allegations could have been presented before the board without difficulty. Therefore, the claimant has waived his commingling claim.

However, the claimant's due process claim could not have been raised before the board because the only proof for the argument derives from the board's final order. Specifically, the claimant relies upon the following language in the board's order as evidence that the board denied him his guaranteed procedural due process rights:

1. Because the claimant does not contend that the Code is unconstitutional, the board could have addressed his constitutional challenge. *Cf. Bunch v. State Board of Auctioneers*, 152 Pa.Commonwealth Ct. 616, 620 A.2d 578 (1993) (commingling may be raised on appeal even when not raised before the agency where the claim involves *the constitutionality of the enabling statute*); *see* Pa.R.A.P. 1551 (quoted in text).

AND NOW, this 6th day of March, 1992, upon review of the Opinion of the Hearing Examiner, and upon consideration of the brief to Hearing Examiner filed by the Claimant and briefs on exceptions filed by PSERS and Claimant, it is hereby ordered that the appeal of Claimant is dismissed.

The claimant suggests that the board's failure to state explicitly that it considered the record is proof that the board did not do so.

However, the board's opinion makes reference to portions of the record that are not found in the briefs. Despite this, the claimant asserts that, "[t]he mere fact that the Board's Opinion [as opposed to the board's order quoted above] contains reference to the record does not establish that the Board, in fact, has reviewed the record." The claimant supports his argument with a unique proposition. "[T]he suggestion that the Board has reviewed the record runs contrary to the Board's argument that factual issues are irrelevant and that the Board was only concerned with legal issues."

However, the claimant's argument is not compelling. Questions of law cannot be resolved without knowledge of the facts. There is no contradiction in studying the record to resolve purely legal issues. Our review of the record indicates that the board, contrary to the claimant's narrow interpretation of one sentence in the board's order, studied the complete record in reaching its decision, and did not deprive the claimant of his guaranteed procedural due process.

Accordingly, the we affirm the order of the board.

## ORDER

NOW, January 27, 1993, the order of the Public School Employees' Retirement Board, dated March 6, 1992, is affirmed.