669 A.2d 940

**Robert D. CHRISTIANA, Appellant,**

v.

**PUBLIC SCHOOL EMPLOYES' RETIREMENT BOARD, Appellee.**

Supreme Court of Pennsylvania.

Argued Sept. 18, 1995.

Decided Jan. 18, 1996.

Robert D. Christiana, pro se.

Louis J. Sheehan, Public School Employes' Retirement Board, Ernest D. Preate, Jr., Attorney General's Office, Harrisburg, for appellee.

Before NIX, C.J., and FLAHERTY, ZAPPALA, CAPPY, CASTILLE and MONTEMURO, JJ.

## *OPINION*

ZAPPALA, Justice.

Appellant, Robert D. Christiana, is a former superintendent of the Upper St. Clair School District. Prior to his retirement, the School District had purchased certain annuities for Christiana. Christiana requested that the amounts paid for the annuities be included by the Public School Employes' Retirement System (PSERS) in its calculation of his final average salary for retirement purposes. After an administrative hearing, the Public School Employes' Retirement Board (Board) entered an order directing that the annuities were not to be included in the computation of his retirement benefits. The Commonwealth Court affirmed the Board's order in an en banc decision. We granted Christiana's petition for allowance of appeal and now affirm.

The Board's opinion set forth detailed factual findings that are summarized as follows. Christiana was hired as the superintendent by the School District in July of 1979 at a starting salary of $52,000. He had been employed previously by school districts in Michigan and New York in various positions and had served as the superintendent of Pennsylvania's Springfield Township School District. Christiana's salary was increased over the next few years:

| 1980–1981 | $58,000 |
| 1981–1982 | $63,500 |
| 1982–1983 | $65,723 |
| 1983–1984 | $71,000 |

In the next five years, the School District reported the following figures as Christiana's salary to PSERS:

| | |
|---|---|
| 1984–1985 | $71,000 |
| 1985–1986 | $71,000 |
| 1986–1987 | $71,000 |
| 1987–1988 | $74,000 |
| 1988–1989 | $80,000 |

Beginning with the 1984–1985 school year, the School District also expended funds to purchase single premium annuities for Christiana. The School District did not report the expenditures as part of Christiana's salary to PSERS or pay retirement contributions on those amounts. The minutes of Upper St. Clair School Board's meetings at which the annuity payments were addressed indicate that the annuity payments were to be made for purposes of purchasing prior years' seniority pension credit.[1] The minutes reflect the costs of the annuity purchases:

| | |
|---|---|
| 1984–1985 | $ 5,000 |
| 1985–1986 | $ 7,000 |
| 1986–1987 | $10,000 |
| 1987–1988 | $ 9,500 |

By early November of 1988, the School Board was apprised of Christiana's intention to retire at the end of the 1988–1989 school year. On November 14, 1988, the School Board adopted a resolution relating to Christiana's anticipated retirement:

RESOLVED, That for the 1988–89 school year, the salary for the Superintendent shall be $80,000; and further,

RESOLVED, That commencing with the retirement of the Superintendent on June 30, 1989, the Blue Cross/Blue Shield or equivalent medical and hospitalization benefits applicable to building administrators shall be continued for the Superintendent until his attaining age 65, and for his wife Nancy, until her attaining age 65, at District expense; and further,

RESOLVED, That the District shall reimburse the Superintendent during the 1988–1989 school year for costs incurred

---

1. The minutes also indicate that the annuity payments were "in lieu of salary increases." For the school year 1987–1988, in which Christiana also received a salary increase of $3,000, the minutes state that "in lieu of any additional salary increase," the School District shall purchase a single premium annuity for purposes of purchasing prior years' seniority pension credit at a cost of $9,500.

for the services of a financial planner, such reimbursement not to exceed $2,000; and further,

RESOLVED, That the District shall purchase for the Superintendent three years' pension credit under the State Retirement Plan for his service in the United States Air Force as permitted by the laws of Pennsylvania; and further,

RESOLVED, That the District shall provide the Superintendent with an annuity or other equivalent payment at a cost to the District of $19,200 for purposes of purchasing for the Superintendent pension credit under the State Retirement Plan for service as an educator in positions prior to his employment under the Pennsylvania retirement system, as permitted by the laws of Pennsylvania; ...

The annuity payment of $19,200 for the 1988–1989 school year became problematic due to changes in the federal tax code that were effective as of January 1, 1989. In response, the School Board rescinded the resolution of November 14, 1988, and adopted a second resolution on January 9, 1989. The resolution split the $19,200 payment into two separate payments of $9,500, which was backdated to the 1988 calendar year, and of $9,700, which was to be made at or prior to Christiana's retirement date of June 30, 1989:

MOTION: By Wellington: WHEREAS, the Board of School Directors at its regular meeting on November 14, 1988, adopted certain resolutions relating to the salary and the benefits payable to or for the benefit of the Superintendent; and

WHEREFORE, prior to the adoption of such resolutions it was represented to the Superintendent that the Board would consider modification to those resolutions after the Superintendent and the District had an opportunity to consult with their respective advisors, and such consultations have taken place and the Board is prepared to make certain modifications;

NOW, THEREFORE, BE IT RESOLVED, that with the consent and agreement of the Superintendent, the resolu-

tions adopted by the Board at its November 14, 1988, meeting relating to the salary and benefits payable to or for the benefit of the Superintendent be and are hereby rescinded and the following resolutions are adopted in their place and stead:

RESOLVED, that for the 1988–89 school year, the salary for the Superintendent shall be $80,000; and further,

RESOLVED, that commencing with the retirement of the Superintendent on June 30, 1989, the Blue Cross/Blue Shield or equivalent medical and hospitalization benefits then applicable to Building Administrators shall be continued for the Superintendent until his attaining age 65, and for his wife, Nancy, until her attaining age 65, at District's expense . . .

RESOLVED, that the District shall reimburse the Superintendent during the 1988–89 school year for costs incurred for the services of a financial planner, such reimbursement not to exceed $2,000; and further,

RESOLVED, that the District, in recognition of the superior manner in which the Superintendent has performed his duties and responsibilities, shall provide the Superintendent in calendar year 1988 with additional compensation in the amount of $9,500; and further,

RESOLVED, that the District shall, at or prior to the retirement of the Superintendent on June 30, 1989, pay to or on behalf of the Superintendent additional compensation in the amount of $9,700 plus an amount necessary to purchase for the Superintendent three years' pension credit under the State Retirement Plan in recognition of his service in the United States Air Force, as permitted by the laws of Pennsylvania.

Pursuant to this resolution, the School District purchased an annuity in the amount of $9,500. The annuity payment was not reflected in Christiana's regular salary. The $9,700 payment made in 1989 was treated differently, however. Christiana received that payment directly, but the School District in turn reduced his monthly take-home pay and used the payroll

deductions to purchase the 1989 annuity. From March of 1989 through June of 1989, the School District reported additional remuneration of $8,730 to PSERS that reflected the payroll changes.

Christiana submitted an application for retirement to PSERS on August 8, 1989. On January 19, 1990, PSERS sent a letter advising the School District that after review of the School Board's minutes of November 14, 1988, and January 9, 1989, the $8,730 reported did not appear to be Christiana's normal salary and that the amount could not be used in calculating his retirement benefits. The School District was requested to submit a form to reflect this change in the reported salary.

The School District did not comply with the request. Instead, a form was sent increasing the salary report by the sum of $970—the difference between the $9,700 annuity purchase for 1989 and the $8,730 originally reported as salary. In a letter dated February 9, 1990, the School District's business manager noted the correction and indicated that in addition, the report for the fourth quarter of 1988 had failed to report a payment of $9,500 to Christiana. The letter stated that the School District viewed the payments as merit increases. On February 27, 1990, PSERS requested a copy of the School District's merit pay policy. The School District did not respond.

On December 19, 1990, PSERS informed Christiana that his request to include the $9,500 for the 1987–1988 school year and the $9,700 for the 1988–1989 school year in its calculation of his final average salary for retirement purposes had been denied. An administrative hearing was held on September 11, 1991, before a hearing examiner to consider whether the $19,200 should be considered as compensation under the Public School Employees' Retirement Code.[2] PSERS learned then that the School District had purchased annuities for Christiana during the four previous school years (1984–1988). At the hearing, Christiana sought for the first time to add

2. Act of October 2, 1975, P.L. 298, as amended, 24 P.C.S. §§ 8101–8104.

each of those annuity purchases to the salary amounts reported by the School District to PSERS. Christiana's take-home pay did not reflect those payments, and as noted earlier, the School District never included any of the annuity purchases in its salary reports to PSERS during those four years.

The hearing examiner recommended that the $19,200 should be excluded from the calculation of Christiana's final average salary because the amount was properly characterized as nonincludable "severance payments" under the Retirement Code. The hearing examiner also recommended that the four annuity payments made during 1984–1988 be included in the calculation of final average salary as compensation.

The Board determined that Christiana had not properly raised the issue relating to the four annuity purchases in the earlier years, but nevertheless addressed the issue because there were sufficient facts on the record for its resolution. The Board concluded that the nonsalary reduction tax shelter annuity payments were not includable as Retirement Code compensation because they were nonstandard and/or nonregular remuneration as well as being bonuses and fringe benefits. The $19,200 annuity purchases in the 1988–1989 school year were found not to be includable in Retirement Code compensation because the payments were components of a severance package and were also characterized as nonincludable bonuses and fringe benefits. On June 24, 1993, the Board entered an order directing that none of the annuity purchases were to be included as Retirement Code Compensation. The Commonwealth Court affirmed the Board's order.

■ On appeal from a final adjudication of an administrative board, our scope of review is limited to a determination of whether the board committed an error of law, whether there has been a violation of constitutional rights, or whether necessary factual findings are supported by substantial evidence. *Estate of McGovern v. State Employees' Retirement Board,* 512 Pa. 377, 517 A.2d 523 (1986). The issue raised in this appeal is whether the Board committed an error of law in determining that the annuity payments were not compensation

for purposes of computing final average salary under the Retirement Code.

Section 8102 of the Retirement Code defines the following relevant terms:

**"Compensation."** Pickup contributions plus any remuneration received as a school employee excluding refunds for expenses incidental to employment and excluding any severance payments.

**"Final average salary."** The highest average compensation received as an active member during any three nonoverlapping periods of 12 consecutive months with the compensation for part-time service being annualized on the basis of the fractional portion of the school year for which credit is received; except, if the employee was not a member for three such periods, the total compensation received as an active member annualized in the case of part-time service divided by the number of such periods of membership; and, in the case of a member with multiple service credit, the final average salary shall be determined by reference to compensation received by him as a school employee or a State employee or both.

**"Pickup contributions."** Regular or joint coverage member contributions which are made by the employer for active members for current service on and after January 1, 1983.

**"Severance payments."** Any payments for unused vacation or sick leave and any additional compensation contingent upon retirement including payments in excess of the scheduled or customary salaries provided for members within the same governmental entity with the same educational and experience qualifications who are not terminating service.

24 Pa.C.S.A. § 8102.

The regulations promulgated under the Retirement Code further refine the definition of "compensation:"

Excludes a bonus, severance payment or other remuneration or similar emoluments received by a school employee during his school service not based on the standard salary

schedule for which he is rendering service. It shall exclude payments for unused sick leave, unused vacation leave, bonuses for attending school seminars and conventions, special payments for health and welfare plans based on the hours employed or any other payment or similar emoluments which may be negotiated in a collective bargaining agreement for the express purpose of enhancing the compensation factor for retirement benefits.

22 Pa.Code § 211.2.

█ The restrictive definitions of compensation under the Retirement Code and regulations reflect the Legislature's intention to preserve the actuarial integrity of the retirement fund by "exclud[ing] from the computation of employes' final average salary all payments which may artificially inflate compensation for the purpose of enhancing retirement benefits." *Dowler v. Public School Employes' Retirement Board,* 153 Pa.Cmwlth. 109, 620 A.2d 639 (1993); *Laurito v. Public School Employes' Retirement Board,* 146 Pa.Cmwlth. 514, 519, 606 A.2d 609, 611 (1992).

In *Laurito v. Public School Employes' Retirement Board,* the Commonwealth Court affirmed a decision of the Retirement Board that refused to include a salary increase for the purposes of computation of retirement benefits for an elementary middle school principal. Dr. Angelo Laurito retired after 42 years of service with the Northern Cambria School District. Laurito's annual salary was negotiated each year with the school district. For the 1984–1985 school year, his salary was $32,600. On July 25, 1985, the school board awarded him a $16,000 "salary adjustment" for the 1985–1986 school year. In addition, Laurito was granted a leave of absence for the 1985–1986 school year, and his July 1, 1986 resignation for retirement purposes was accepted.

PSERS notified Laurito that the $16,000 increase would not be included as compensation for retirement purposes. The Retirement Board upheld the determination, concluding that the claimed salary adjustment was a severance payment. The Commonwealth Court affirmed on appeal, finding that the

record failed to establish that Laurito's salary increase was customary for an individual of similar experience within the school district. The court concluded that the school board's actions were tantamount to a severance agreement, stating

> We find especially persuasive the observation made by the board that the $16,000 payment in the final year of service provided a mechanism for the school district to recognize Laurito's devoted service, as well as to remedy the perceived inequity of a below-average salary throughout a working lifetime, by effectuating an inflated final salary for purposes of retirement benefits.

146 Pa.Cmwlth. at 519–20, 606 A.2d at 611–12.

In *Dowler v. Public School Employes' Retirement Board,* the Commonwealth Court held that a payment made pursuant to a retirement agreement was not compensation despite the personnel director's performance of consulting services. William Dowler was employed for over seventeen years as the personnel director at the West Chester Area School District before his retirement on July 1, 1988. In addition to his other duties, Dowler conducted all of the school district's labor negotiations in the first three years of his employment. The school district hired private contractors to conduct labor negotiations thereafter.

On November 17, 1987, Dowler and the school district entered into an agreement concerning his retirement. Dowler was to be placed on a reduced work schedule from January 1, 1988, to July 1, 1988. He was to be compensated during that time as if he were working a five-day schedule and his duties would include training a replacement and assisting with negotiations. In addition, funds were to be given to Dowler on January 1, 1988, to purchase credit for his military services in an amount not to exceed $15,000.

For the first time in Dowler's experience, three labor contracts expired at the end of June, 1988. Dowler assisted in the negotiations while working full-time as the personnel director. A new director was not hired until May, 1988. The school district paid $14,854.08 to Dowler, which he used to

purchase retirement credit for military service. PSERS concluded that the amount was a severance payment and did not include it as part of Dowler's final average salary in computing his retirement compensation.

Dowler appealed the determination, asserting that he did not receive the benefit of his agreement because he was not given the opportunity to work half-time at full pay. The Board concluded that the money represented a severance payment and dismissed the appeal. The Commonwealth Court affirmed, stating

> Under the Code, all payments, other than for regular professional salary, which are part of an agreement in which a professional member agrees to terminate school service by a date certain, are prima facie severance payments. The claimant may rebut a prima facie case only by showing that the payment is in accord with the scheduled or customary salary scale within the School District for personnel with the same educational and experience qualifications who are not terminating service.

153 Pa.Cmwlth. at 115–16, 620 A.2d at 643.

In furtherance of its responsibility to ensure the actuarial soundness of the retirement fund, the Board has determined that it is statutorily required to exclude nonregular remuneration, nonstandard salary, fringe benefits, bonuses, and severance payments from inclusion as compensation under the Retirement Code. The Board has developed the concepts of "standard salary" and "regular remuneration" as part of its understanding of compensation.

> Based upon its interpretation of the Retirement Code and accompanying regulations, standard salary and regular remuneration are defined by the Board as take-home cash, *including*, among others, (i) amounts withheld for tax remittances; (ii) amounts picked up as contributions to PSERS; and (iii) amounts appropriately deferred in qualifying deferred compensation programs, and *excluding*, fringe benefits, bonuses, severance payments, and *non-*

*salary reduction Internal Revenue Code § 403(b) tax sheltered annuities.*

*Christiana v. Public School Employes' Retirement Board,* 166 Pa.Cmwlth. 300, 309, 646 A.2d 645, 649–50 (1994) (emphasis supplied).

The nonsalary reduction tax sheltered annuities purchased for Christiana during the four consecutive school years beginning in 1984–1985 were found by the Board to be nonstandard salary, nonregular remuneration and bonuses or fringe benefits under this analysis.[3] The $19,200 in annuity purchases, which the School District authorized after being advised of Christiana's impending retirement, were excluded as being part of a severance package.

Christiana had received salary increases for the first three years after he became superintendent for the Upper St. Clair School District. Over a four-year period, Christiana's annual salary increased from $58,000 to $71,000. When his salary for 1984–1985 was under consideration, members of the School Board expressed concern that an additional increase would generate negative publicity. A newspaper reporter's comment that Christiana's salary at that time exceeded that of Pennsylvania's Governor was repeated in the headlines of a local newspaper. Unwilling to confront public scrutiny of a salary increase, the School Board elected to freeze Christiana's salary and purchased a single premium annuity for the purpose of purchasing prior years' seniority pension credit.

Richard J. Mancini, the School District's business manager, testified that Christiana was the highest paid school superintendent in Western Pennsylvania, including the City of Pitts-

3. Such annuities are distinguishable from the annuity contracts purchased under a deferred compensation program authorized under the Fiscal Code, Act of March 30, 1811, P.L. 145 as amended, 72 P.S. §§ 4521.1–4521.2. Income deferred under programs authorized thereunder is included as regular compensation for the purpose of computing deductions for employe contributions to retirement and pension programs and for the purpose of computing retirement and pension benefits. 72 P.S. § 4521.1(e). Christiana's assertion that the annuity purchases made on his behalf qualified for treatment as deferred compensation under this provision fails to recognize this distinction and is unsupportable.

burgh School District which was ten times the size of Upper St. Clair's School District. Mancini indicated that the single premium annuity was considered as a way to handle adverse public reaction because responses to salary surveys would not include that amount. He considered the annuity purchases to be compensation.

Nevertheless, the record establishes that the School District did not report the annuity payments to PSERS as compensation paid to Christiana and did not pay pickup contributions on those amounts. In fact, the School District continued to purchase single premium annuities even when salary increases were approved in subsequent years. In the 1987–1988 school year, Christiana's salary was increased to $74,000 and a single premium annuity in the amount of $9,500 was purchased. His salary was then increased to $80,000 in the following year in which an additional $9,500 was earmarked for an annuity purchase.

With respect to the $19,200 annuity payment, the School Board's resolutions indicate that it was part of a comprehensive salary and benefits package developed after notice of Christiana's impending retirement. The School Board's initial resolution dated November 14, 1988, contemplated a salary increase to $80,000, payment for services of a financial planner not to exceed $2,000, continuing medical benefits for Christiana and his wife until age 65, the purchase of three years' pension credit for military service[4], and the $19,200 annuity purchase. On January 9, 1989, the resolution was rescinded. A second resolution was adopted which incorporated all of the earlier provisions, but split the $19,200 into two separate annuity purchases.

The Commonwealth Court concluded that the Board did not err in excluding the annuity payments from the calculation of Christiana's final average salary. As to the 1988–1989 salary and benefits package, the court found that the record was devoid of any evidence that the package was in accord with the

4. The amount expended by the School District for this purchase was approximately $21,000. Christiana did not seek to include this amount in the computation of his retirement benefits.

District's regular and standard yearly compensation practices, particularly those involving Christiana himself over the ten-year term of his employment.

█ We find that the Commonwealth Court did not err in concluding that none of the annuity purchases were includable as compensation for purposes of determining Christiana's final average salary. There is substantial evidence in the record to support the Retirement Board's conclusions that the annuity payments were remuneration that was not based on the standard salary schedule for which Christiana was rendering service, and that the $19,200 payment was a severance payment. Therefore, under the Retirement Code and applicable regulations, the annuity payments were properly excluded from the computation of Christiana's final average salary.

The order of the Commonwealth Court is affirmed.

MONTEMURO, J., who was sitting by designation, did not participate in the decision of this case.