**IN THE SUPREME COURT OF PENNSYLVANIA**
**MIDDLE DISTRICT**


**BAER, C.J., SAYLOR, TODD, DONOHUE, DOUGHERTY, WECHT, MUNDY, JJ.**


| | | |
|---|---|---|
| RAYMOND J. WHALEN, | : | No. 33 MAP 2021 |
| | : | |
| Appellee | : | Appeal from the Order of the |
| | : | Commonwealth Court at No. 45 C.D |
| | : | 2020 dated October 27, 2020, |
| v. | : | Reversing the Order of the Public |
| | : | School Employees' Retirement |
| | : | Board at No. 2016-05 dated |
| PUBLIC SCHOOL EMPLOYEES' | : | December 6, 2019. |
| RETIREMENT BOARD, | : | |
| | : | ARGUED:  October 26, 2021 |
| Appellant | : | |


## OPINION


**JUSTICE WECHT**                                                **DECIDED:  December 22, 2021**

The question in this case is whether a lump-sum payment that a school district made to settle a principal's age-discrimination claim should be included in that employee's retirement benefit calculation.  We conclude that the Commonwealth Court disregarded the Retirement Code's statutory definition of "compensation" and instead deferred to the intent of the settling parties to treat the payment as retirement-covered compensation. Accordingly, we reverse.

Raymond Whalen was a school principal at the Wyoming Valley West School District ("District") from July 1995 to September 2014.  In May 2011, Whalen filed an age discrimination charge against the District with the Equal Employment Opportunity Commission ("EEOC").  Whalen alleged that, in 2010, he was excluded from pay raises that the District awarded to younger principals.  Whalen subsequently filed a federal age-

discrimination action in the Middle District of Pennsylvania in which he sought, among other things, back pay and compensatory damages.

In June 2014, Whalen and the District entered into a settlement agreement, which provided, in relevant part, that:

> [the District] agrees to pay $15,000, in the form of a salary enhancement in full and final settlement of this matter to [Whalen] and $5,000 in full and final settlement of attorney's fees and costs to [Whalen's] attorney . . . . [The District] will cause the salary enhancements to be made before the end of business on June 30, 2014, and will make such payment and withholdings as are required in the normal course of payroll payments. It is the intent of the parties that this salary adjustment be income qualified for full pension credit by PSERS to be allocated to the year 2013-2014.

Settlement Agreement & Release, 6/27/2014, at 2 (R.R. 63a).

According to the settlement agreement, the $15,000 payment to Whalen constitutes "a full and final release of all claims of every nature and kind whatsoever and that it releases all claims for injuries, losses, and damages that are presently known or suspected and all claims for injuries, losses, and damages that are not presently known or suspected but which may later develop or be discovered." *Id.* at 3. The agreement also required Whalen to "submit an irrevocable letter of retirement from his employment with the [District] to be effective September 24, 2014." *Id.*

Consistent with the settlement agreement, Whalen signed a separate document irrevocably retiring from the District effective September 24, 2014. After Whalen's retirement, the Public School Employees' Retirement System ("PSERS") sent him a Retirement Benefit Letter stating that his final average salary ("FAS") for benefit calculation purposes was $89,726.48—an amount that did not include the District's $15,000 settlement payment.[1]

---

[1]      FAS is a major component of the pension benefit formula, with a higher FAS generally equating to a higher monthly pension benefit. Though the calculation varies depending on a member's "class of service," most retirement-eligible PSERS members

Whalen filed a benefit appeal with PSERS, arguing that the $15,000 payment should have been considered retirement-covered compensation for the 2013-2014 school year, as per the terms of his settlement with the District. PSERS rejected this argument, explaining in a letter that "[t]he $15,000.00 settlement amounts to a damage award and does not represent your standard salary or back wages and benefits for the period at issue. PSERS cannot recognize a damage award as retirement-covered compensation." Letter, 2/3/2016, at 1 (R.R. 134a).

Whalen then appealed to the Public School Employees' Retirement Board ("Board"), again arguing that the entire settlement amount constituted back pay attributable to a single year (the 2013-2014 school year). According to Whalen, the settlement represented compensation that he would have received but for the District's alleged age discrimination. Thus, Whalen contended that the settlement amount should have been included in his FAS. The Board rejected Whalen's claim, finding that the $15,000 settlement was not "compensation" as defined by the Retirement Code. "Rather, it was a payment made in exchange for a release of all claims by [Whalen] against the District and was made in conjunction with an irrevocable notice of retirement." Board Decision, 12/6/2019, at 9 (R.R. at 281a).

Reviewing the applicable statutes, the Board explained that the Retirement Code defines FAS to mean "the highest average compensation received as an active member during any three nonoverlapping periods of 12 consecutive months[.]" 24 Pa.C.S. § 8102. "Compensation," in turn, is defined in relevant part to mean "any remuneration received as a school employee excluding reimbursements for expenses incidental to employment and excluding any bonus, severance payments, any other remuneration or other

_____

are entitled to a benefit equal to 2% of their FAS multiplied by the number of years of "credited service." *See Hoerner v. Pub. Sch. Emps.' Ret. Bd.*, 684 A.2d 112, 116 (Pa. 1996).

emolument received by a school employee during his school service which is not based on the standard salary schedule under which he is rendering service[.]" *Id.* This restrictive definition of compensation reflects "the Legislature's intention to preserve the actuarial integrity of the retirement fund by 'excluding from the computation of employe[e]s' final average salary all payments which may artificially inflate compensation for the purpose of enhancing retirement benefits.'" *Christiana v. Pub. Sch. Emps.' Ret. Bd.*, 669 A.2d 940, 944 (Pa. 1996) (quoting *Dowler v. Pub. Sch. Emps.' Ret. Bd.*, 620 A.2d 639, 641 (Pa. Cmwlth. 1993)) (cleaned up).

The Board also explained that, while the Retirement Code does not recognize damage awards or settlement payments as "compensation," the Board nevertheless "allows the constructive awarding of such amounts as 'compensation' when ordered by a court for the purpose of upholding a member's contractual rights for a specified period." Board Decision at 9. This allows PSERB members who settle adverse employment actions "to be made whole while ensuring against potential windfalls." *Id.* To have a settlement payment recognized as retirement-covered compensation, the member "must prove that the amount he received represents the actual pay that he would have earned in that school year had the purported adverse employment action not occurred." *Id.* "This policy ensures that PSERS does not erroneously factor into a member's FAS an arbitrary payment that is not based on the member's standard salary schedule under which he is rendering service." *Id.*

The Board ultimately concluded that it was not authorized to include Whalen's $15,000 settlement in the computation of his FAS given that the Code specifically excludes from the definition of compensation any remuneration "received by a school employee during his school service which is not based on the standard salary schedule under which he is rendering service[.]" 24 Pa.C.S. § 8102; *see* Board Decision at 9

("Neither PSERS nor the Board is authorized to recognize a damage award, a settlement payment, a severance payment, or compensation that is not based on the standard salary schedule as creating retirement credit where none is due."). The Board found no support for Whalen's claim that the $15,000 payment constituted back pay that he should have earned during the 2013-2014 school year. Indeed, the Board emphasized that the settlement agreement did not reference or incorporate a standard salary schedule for Whalen's position. Furthermore, Whalen continued to work for the District for three months following the settlement; yet, the undisputed evidence showed that Whalen's base salary did not increase by $15,000 during the post-settlement period.

Additionally, although the settlement agreement states that the entire $15,000 should be "allocated to the year 2013-2014," Settlement Agreement & Release at 2, Whalen himself claimed that the settlement represents wages that he lost during "the final three years of his employment." Board Decision at 9. The settlement agreement also fails to mention "back pay" or "lost wages" at all, and it classifies the $15,000 payment as a "salary enhancement" being paid as a "full and final settlement" to "effect a compromise of a disputed claim." Settlement Agreement & Release at 2. For these reasons, the Board concluded that "there is no evidence that would indicate the 'salary enhancement' was to be anything other than a one-time payment, outside of [Whalen's] standard salary." Board Decision at 11.

In a unanimous published decision, the Commonwealth Court reversed the Board. The court acknowledged that "PSERS cannot be bound by characterizations of money payments made to a PSERS member pursuant to a private contractual settlement to which it is not a party." *Whalen v. Pub. Sch. Emps.' Ret. Bd.*, 241 A.3d 1242, 1253 (Pa. Cmwlth. 2020) (quoting *Hoerner v. Pub. Sch. Emps.' Ret. Bd.*, 684 A.2d 112, 117 n.10 (Pa. 1996)). Nevertheless, the court opined, "the Board must render a decision on

whether such payment is [retirement-covered compensation] based on the evidence, and, in doing so, must review the Settlement Agreement to 'ascertain and give effect to the parties' intent.'" *Id.* (quoting *Dick Enterprises, Inc. v. Pa. Dept. of Transp.*, 746 A.2d 1164, 1168 (Pa. Cmwlth. 2000)).

Turning to the instant settlement agreement, the court determined that the document "clearly expresses the parties' intent that the $15,000.00 payment was a salary enhancement **to resolve Whalen's claim for back pay**, and was to be [retirement-covered compensation]." *Id.* (emphasis in original). The court underscored the unambiguous language in the agreement stating that "[i]t is the intent of the parties that this salary adjustment be income qualified for full pension credit by PSERS to be allocated to the year 2013-2014." *Id.* (quoting the settlement agreement). In the court's view, that provision constitutes "a clear expression of the parties' intent that the payment was what Whalen should have received as part of his salary and, thus, be credited to his pension." *Id.* Accordingly, the court held that the Board erred as a matter of law when it declined to treat Whalen's settlement as retirement-covered compensation.

The Board then petitioned this Court for allowance of appeal, which we granted to consider whether the Commonwealth Court correctly concluded that Whalen's settlement constitutes "compensation" under the Retirement Code. As with all questions of statutory interpretation, this case presents a pure question of law over which our standard of review is *de novo*, and our scope of review is plenary. *Brown v. Levy*, 73 A.3d 514, 517 (Pa. 2013).

Before this Court, the Board continues to maintain that there is no proof that Whalen's $15,000 settlement represents additional salary that he would have earned during the 2013-2014 school year but for the District's alleged age discrimination. The Commonwealth Court rejected this argument because it believed that "the amount

Whalen sought was for raises he was not awarded due to alleged age discrimination and, thus, the Settlement Agreement itself is evidence of the amount of actual pay he would have received during the 2013-2014 school year." *Whalen*, 241 A.3d at 1252 (emphasis omitted). According to the Board, however, this approach conflicts with the Retirement Code's definition of "compensation" and with this Court's holding in *Christiana*.

As explained above, the Retirement Code excludes from the definition of "compensation" any "remuneration or other emolument received by a school employee during his school service which is not based on the standard salary schedule under which he is rendering service[.]" 24 Pa.C.S. § 8102. The Board argues that the Commonwealth Court effectively ignored this exclusion when it ordered PSERS to include remuneration that was not based on the District's "standard salary schedule" in Whalen's FAS. *Id.*

As for the intermediate court's theory that the settlement agreement itself establishes the parties' intent to treat the payment as compensation for 2013-2014 school year, the Board emphasizes that "PSERS cannot be bound by characterizations of money payments made to a PSERS member pursuant to a private contractual settlement to which it is not a party." Brief for Board at 38 (quoting *Hoerner*, 684 A.2d at 117 n.10). In the Board's view, it is the Retirement Code's statutory definitions—not the intent of the settling parties—that controls whether remuneration constitutes retirement-covered compensation.[2]

---

[2] The Board alternatively argues that Whalen's settlement was a severance payment, given that the settlement agreement required him to submit an irrevocable letter of retirement from his employment with the District. Because we conclude that the settlement did not constitute "compensation" for other reasons, we do not address that argument today. We simply note for the benefit of those reading this decision in the future that the Retirement Code also explicitly excludes from the definition of "compensation" "any additional compensation contingent upon retirement." *See* 24 Pa.C.S. § 8102 (providing that "compensation" excludes "any bonus, *severance payments*, any other remuneration[,] or other emolument received by a school employee during his school service which is not based on the standard salary schedule under which he is rendering

Whalen, on the other hand, argues that the nature of the settled claim itself demonstrates that the settlement constitutes "compensation" under the Retirement Code. Brief for Whalen at 16-17 ("Whalen's entire claim, first to the EEOC, and then in his federal lawsuit was to **enforce** the standard salary schedule as it applied to him, by eliminating the invidious effects of the age discrimination he suffered." (emphasis in original)). In other words, Whalen contends that, because his EEOC charge and subsequent civil complaint "expressly claimed back pay entitlement on account of age discrimination," the Board should have assumed that "his salary loss was equivalent to the amount received by [the] agreement." *Id.* at 17. Whalen also underscores that there is no evidence that the settlement gave him a windfall. *Id.*

We are persuaded by the Board's argument that the decision below deviated from the Retirement Code's statutory definition of "compensation" and instead relied on the intent of the parties as reflected in the settlement agreement. While it acknowledged that "PSERS cannot be bound by characterizations of money payments made to a PSERS member pursuant to a private contractual settlement to which it is not a party," *Whalen*, 241 A.3d at 1253 (quoting *Hoerner*, 684 A.2d at 117 n.10), the Commonwealth Court nonetheless deferred unhesitatingly to the text of the settlement agreement. Indeed, the court's analysis hinges entirely on whether the parties *intended* for the $15,000 payment to be "compensation" under the Retirement Code. The mere fact that the parties' called the $15,000 payment retirement-covered compensation is irrelevant. "You can call a camel an elephant but that won't make its hump disappear. Labels do not change substance." *Houston Gen. Ins. Co. v. Brock Const. Co.*, 246 S.E.2d 316, 319 (Ga. 1978) (Undercofler, P.J., concurring).

service" (emphasis added)); *id.* (defining severance payments to mean "[a]ny payments for unused vacation or sick leave and any additional compensation contingent upon retirement").

In *Christiana v. Public School Employees' Retirement Board.*, 669 A.2d 940 (Pa. 1996), for example, our court considered whether tax-sheltered annuities that a school district purchased for its superintendent constituted compensation under the Retirement Code. The retiree in that case, Robert Christiana, received sizable raises during his first three years on the job, increasing his salary from $58,000 to $71,000. When Christiana's salary for the 1984-1985 school year was under consideration, members of the School Board worried that additional raises would generate negative publicity given that articles previously had appeared in a local newspaper noting that Christiana's salary at that time exceeded that of Pennsylvania's Governor. Afraid of the public backlash that could accompany further salary increases, the School Board elected to freeze Christiana's salary and purchase a single premium annuity, which Christiana could then use to purchase prior years' seniority pension credit.

The Board ultimately excluded the annuity payments from the calculation of Christiana's FAS. On appeal, the Commonwealth Court held that the Board did not err in excluding the annuity payments. The court found that the record was devoid of any evidence that the compensation package tracked the District's regular and standard yearly compensation practices, particularly those involving Christiana himself over the ten-year term of his employment.

On further appeal, this Court found "substantial evidence in the record to support the Retirement Board's conclusions that the annuity payments were remuneration that was not based on the standard salary schedule for which Christiana was rendering service, and that the $19,200 payment was a severance payment." *Id.* at 946. Thus, we concluded that "the annuity payments were properly excluded from the computation of Christiana's final average salary." *Id.* In so holding, we emphasized that "[t]he restrictive definitions of compensation under the Retirement Code and regulations reflect the

Legislature's intention to preserve the actuarial integrity of the retirement fund by excluding from the computation of employees' final average salary all payments which may artificially inflate compensation for the purpose of enhancing retirement benefits." *Id.* at 944 (quoting *Dowler v. Pub. Sch. Emps.' Ret. Bd.*, 620 A.2d 639 (Pa. Cmwlth. 1993)) (cleaned up).

As we explained in *Christiana*, the Board has a duty to "ensure the actuarial soundness of the retirement fund" by "exclud[ing] nonregular remuneration, nonstandard salary, fringe benefits, bonuses, and severance payments from inclusion as compensation under the Retirement Code."[3] *Christiana*, 669 A.2d at 945. Yet, under the Commonwealth Court's holding below, an employer and employee could agree to bind the retirement system to pay out a higher benefit than anticipated without an opportunity for the system to evaluate whether the amount legitimately represents retirement-covered compensation. This approach ignores our Court's observation in *Christiana* that the restrictive definitions of "compensation" set forth in the Retirement Code were an intentional effort on the part of the General Assembly to exclude from an employee's final average salary any payments outside of the employee's standard salary schedule designed to artificially inflate the employee's retirement benefits. *Christiana*, 669 A.2d at 944.

Here, the Board had ample reason to conclude that Whalen's $15,000 settlement did not constitute retirement-covered compensation. For one thing, the settlement

---

[3] To hold otherwise could potentially allow employers to inflate an employee's FAS artificially. Imagine, for example, that a teacher who is approaching retirement has a valid legal claim against her school district and is willing to settle the claim for $50,000. The district could, in theory, make a low settlement offer—say, $25,000—but agree to call the payment retirement-covered compensation and attribute it to a single year, thus inflating the teacher's future retirement benefits. This would essentially shift part of the district's liability onto the already-burdened pension system. This is why the Board has an independent duty to exclude nonstandard payments like bonuses and severance payments from inclusion as retirement-covered compensation.

agreement itself states that the $15,000 payment is a "salary enhancement" to be paid as a "full and final settlement" and "to effect a compromise of a disputed claim." Settlement Agreement & Release at 2. But the agreement fails to mention when the "salary enhancement" was earned, which makes it impossible for PSERS to treat the payment as "compensation" even if it wanted to do so. *See* 22 PA. CODE § 211.2(b) ("For final average salary purposes, retirement-covered compensation is credited in the school year in which it is *earned*, not paid." (emphasis added)). And even though Whalen claims that the settlement represents the wages he lost during "the final three years of his employment" (which would be the 2011-2012, 2012-2013, and 2013-2014 school years), the settlement agreement nevertheless states that the entire payment should "be allocated to the year 2013-2014." Settlement Agreement & Release at 2.

More importantly, the agreement does not reference or incorporate a standard salary schedule—neither the schedule that Whalen was on nor the one he would have been on absent the District's alleged discrimination—and Whalen has not produced such a schedule during this litigation. This is crucial, because the Code explicitly excludes from the retirement calculation any remuneration not based on the employee's standard salary schedule. *See* 24 Pa.C.S. § 8102 (excluding from the definition of compensation "any bonus, severance payments, [or] any other remuneration or other emolument received by a school employee during his school service which is not based on the standard salary schedule under which he is rendering service"). The Commonwealth Court disregarded this exclusion when it ordered PSERS to include in Whalen's FAS remuneration that could not possibly have been consistent with the District's standard salary schedule.[4]

---

[4]  Even though the District's salary schedules are not part of the certified record before us, we know that Whalen did not receive a $15,000 annual raise, because he continued to work for the District for three months after the settlement, while nonetheless continuing to receive his same, pre-settlement salary. Had the $15,000 settlement payment been standard salary for Whalen for the 2013-2014 school year, there would

The Commonwealth Court ignored the many defects in Whalen's settlement agreement and relied instead on the bald assertion in the contract that "[i]t is the intent of the parties that this salary adjustment be income qualified for full pension credit by PSERS to be allocated to the year 2013-2014." Settlement Agreement & Release at 2. This was error. The intent of the parties to treat the lump-sum as retirement-covered compensation cannot overcome the Retirement Code's unambiguous definition of "compensation," which plainly excludes "any other remuneration or other emolument received by a school employee during his school service which is not based on the standard salary schedule under which he is rendering service[.]" 24 Pa.C.S. § 8102. Accordingly, we reverse the order of the Commonwealth Court.

Chief Justice Baer and Justices Saylor, Todd, Donohue, and Mundy join the opinion.

Justice Dougherty files a concurring opinion.

---

have been a corresponding increase to Whalen's annual base salary post-settlement. Yet he continued to earn an amount consistent with his pre-settlement salary during the short period that he worked after executing the settlement but before officially retiring on September 24, 2014.

Whalen responds to this by suggesting that some portion of the $15,000 settlement actually represented future pay for the time that he worked after the settlement. But that argument conflicts with the text of the settlement agreement, which says that the entire sum should be allocated to the 2013-14 school year, and with Whalen's position in the Commonwealth Court, where he argued that the full $15,000 payment was attributable to either the 2013-14 school year or alternatively should be split evenly over his last three years of employment.