David W. HUGHES, Petitioner,

v.

PUBLIC SCHOOL EMPLOYES' RETIREMENT BOARD, Respondent.

Commonwealth Court of Pennsylvania.

Argued May 8, 1995.

Decided July 21, 1995.

---

Gerald K. Schrom, for petitioner.

David W. Speck, for respondent.

Before KELLEY and NEWMAN, JJ., and KELTON, Senior Judge.

KELLEY, Judge.

David W. Hughes (claimant) appeals an order of the Public School Employes' Retirement Board (Board) which (1) denied claimant's appeal regarding his request that his retirement annuity be calculated using 30 years of credited service; and (2) ordered that the Public School Employes' Retirement System (PSERS) provide for the collection of any amounts overpaid to claimant as a result of the miscalculation of his credited service. We affirm.

Claimant worked as a substitute teacher for part of the 1961–62 school year and for all of the 1962–63 school year in the Chester Public School System (System). He first became a member of PSERS in September 1963, by virtue of his employment with the System. With the exception of the 1964–65 school year, claimant served as a teacher with the System until he terminated his service in June 1991. During the 1964–65 school year, claimant ceased his membership in PSERS, and he withdrew his contributions made during the 1963–64 school year.

Claimant returned to the System for the 1965–66 school year. He had another interruption in service during that school year. As the result of an automobile accident and his inability to work, claimant did not receive credited service from March 1966, when his sick leave ran out, until September 1966, when he resumed teaching. Consequently, claimant received only .80 years of credited service for the 1965–66 school year.

In May 1974, claimant purchased credit for his previously credited but withdrawn contributions made during the 1963–64 school year. Claimant also tried to purchase credit for his previously uncredited service during the 1961–62 and 1962–63 school years. However, claimant's check as payment for this purchase was returned to him for insufficient funds. Nonetheless, in January 1975, PSERS improperly credited claimant's account with 1.6 years of service despite claimant's returned check.[1]

Claimant submitted a second check, received by PSERS on February 21, 1975, which PSERS processed without a problem. PSERS then erroneously credited claimant's account with another 1.6 years of service, in addition to the 1.6 years that had not been removed after claimant's first check was returned to him for insufficient funds. PSERS failed to remove the erroneously credited 1.6 years of service until after claimant had retired in June 1991.

Each of the annual statements sent by PSERS to claimant from 1975 through 1990 erroneously credited claimant with 1.6 years of service more than that to which he was entitled. Prior to his retirement, claimant requested and received a letter from PSERS confirming that claimant would have 30 years of credited service after he had completed the 1990–91 school year.[2] When claimant retired in June 1991 and began receiving a monthly annuity, PSERS records showed that claimant had 30 years of credited service.

In January 1992, PSERS discovered that 1.6 years of credited service had been erro-

---

1. After PSERS returned claimant's check, it sent him a letter, dated February 10, 1975, stating:

     This is in further reference to your check received in this office December 30, 1974, in the amount of $730.34, for the purchase of your 1.60 years of uncredited service.

     Please be advised we deposited your check to your account and the bank returned it to this office marked insufficient funds. Therefore, we are taking credit for this uncredited service and if in the future you wish to make payment for this service we will have to receive either a certified check or money order for the amount due.

2. The letter stated that claimant would qualify for the "30 and out" retirement incentive. This incentive, set forth in section 8312 of the Public School Employees' Retirement Code (Retirement Code), 24 Pa.C.S. § 8312, allows a member with at least 30 years of credited service to retire with an annuity unreduced by the fact that the member has not reached normal retirement age.

neously posted to claimant's account. By letter dated January 21, 1992, PSERS notified claimant that his monthly annuity would be reduced from $1719.90 to $1081.71. The letter also stated that claimant had been overpaid by $4722.00 and that he had to repay that amount within 30 days or have his monthly annuity further reduced. Claimant appealed the reduction in his monthly annuity. By letter dated July 1, 1992, the PSERS Appeals Committee denied claimant's appeal.

On May 12, 1993, an administrative hearing on the matter was held before a hearing examiner. At the hearing, claimant asserted that (1) PSERS should be equitably estopped from adjusting his retirement benefits because, in making his retirement decision, he had relied, to his detriment, upon PSERS's mistake; (2) PSERS's failure to correct the error in claimant's account for seventeen years was a violation of PSERS's statutory duty to correct errors upon their discovery; and (3) PSERS's adjustment of his retirement benefits was an unconstitutional "taking" of claimant's property because it violated his procedural and substantive due process rights. Claimant refused to testify on his own behalf at the hearing, invoking his Fifth Amendment right against self-incrimination. Claimant asserted that answering any questions would expose him to a criminal prosecution under section 8534(a) of the Retirement Code.[3]

On January 11, 1994, the hearing examiner issued an opinion recommending that the Board dismiss claimant's appeal as to the issue of equitable estoppel and deny claimant's appeal as to all other issues. Claimant filed with the Board exceptions to the hearing examiner's opinion. PSERS filed a request that the Board make additional findings of fact and conclusions of law concerning the overpayment of claimant's account which were not addressed in the hearing examiner's opinion.

The Board accepted the opinion of the hearing examiner and denied claimant's appeal requesting that his annuity be calculated using 30 years of credited service. The Board further ordered that PSERS provide for the collection of any amounts overpaid to claimant as a result of the miscalculation of claimant's credited service.

The Board found that, because claimant had received only a partial year of credit for the 1961–62 and 1965–66 school years, and because he was not a member of PSERS during the 1964–65 school year, claimant knew or should have known that he did not have 30 years of credited service for his 30 years of employment with the System. Since claimant was a teacher for exactly 30 years, he would have had to have received full credit for each of those years in order to have attained 30 years of credited service by 1991.

The Board concluded that claimant had failed to sustain his burden of showing, by clear and convincing evidence, that he justifiably relied on information overstating his credited years of service by 1.6 years. The Board further concluded that the Retirement Code requires PSERS to correct errors on a member's account when those errors affect the amount of retirement benefits a member is receiving.[4]

The Board stated that, even if claimant had demonstrated that he had justifiably relied on PSERS misinformation, this court's ruling in *Finnegan v. Public School Em-*

---

3. 24 Pa.C.S. § 8534(a). Section 8534(a) sets forth as follows:

(a) **Penalty for fraud.**—Any person who shall knowingly make any false statement or shall falsify or permit to be falsified any record or records of this system in any attempt to defraud the system as a result of such act shall be guilty of a misdemeanor of the second degree.

4. Section 8534(b) of the Retirement Code provides as follows:

(b) **Adjustment of errors.**—Should any change or mistake in records result in any member, beneficiary, or survivor annuitant receiving from the system more or less than he would have been entitled to receive had the records been correct, then regardless of the intentional or unintentional nature of the error and upon the discovery of such error, the board shall correct the error and so far as practicable shall adjust the payments which may be made for and to such person in such a manner that the actuarial equivalent of the benefit to which he was correctly entitled shall be paid.
24 Pa.C.S. § 8534(b).

*ployes' Retirement Board,* 126 Pa.Commonwealth Ct. 584, 560 A.2d 848 (1989), *aff'd per curiam,* 527 Pa. 362, 591 A.2d 1053 (1991), would prohibit PSERS from granting claimant's requested relief.[5] The Board concluded that correcting an error in claimant's account and reducing claimant's monthly annuity was not an unconstitutional "taking" because claimant did not have a property interest in retirement benefits to which he was not legally entitled. Finally, the Board stated that the Retirement Code required PSERS to collect from claimant any overpayments which had resulted from the mistaken calculation of his years of credited service. *See* 24 Pa.C.S. § 8534(b). Claimant now brings this appeal.[6]

In his appeal, claimant raises the following issues: (1) whether he satisfied his burden of proving, by clear and convincing evidence, that he justifiably relied on PSERS statements and, thus, proved all of the elements of equitable estoppel; (2) whether *Finnegan* applies to the facts of this case; (3) whether the Board's recalculation of claimant's benefits was an unconstitutional taking; (4) whether claimant's invocation of his Fifth Amendment right against self-incrimination was improperly held against him by the Board; and (5) whether the Board acted against public policy and fairness when it recalculated claimant's annuity based on an error which PSERS failed to correct when it was first discovered.

**5.** In *Finnegan,* a teacher appealed from a decision of the Board which refused to adopt a hearing officer's recommendation that she be permitted to purchase 15 additional years of credit which she needed in order to qualify for early retirement. The teacher sought the benefit of early retirement on the basis of estoppel, even though section 8304(c) of the Retirement Code, 24 Pa.C.S. § 8304(c), prohibited her from purchasing more than 12 years of service.

This court stated that a review of the record and testimony indicated that all factual requisites for a showing of estoppel had been met by the teacher. The teacher had been told by PSERS employees that she could purchase the 15 additional years of credit which she needed for early retirement, even though the Retirement Code prohibited the purchase of more than 12 years. However, this court went on to say that, under Pennsylvania law, while the doctrine of equitable estoppel is applicable to governmental agencies, there are limited situations in which estoppel cannot be invoked against the Commonwealth or

■ Claimant first argues that he showed, by clear and convincing evidence, that he justifiably relied on PSERS misstatements and that the Board's determination was not based on substantial evidence. We disagree.

■ The essential elements of equitable estoppel are: (1) an inducement of a party to believe that certain facts exist; (2) an act of justifiable reliance upon that belief; and (3) a detriment to the actor. *Finnegan.* The elements of estoppel must be proven by clear and convincing evidence, with the critical elements being misrepresentation and justifiable reliance. *Police Pension Fund Association Board v. Hess,* 127 Pa.Commonwealth Ct. 498, 562 A.2d 391, *petition for allowance of appeal denied,* 524 Pa. 614, 569 A.2d 1371 (1989). It is well established that the party who maintains the existence of certain facts bears the burden of proving those facts. *Wingert v. State Employes' Retirement Board,* 138 Pa.Commonwealth Ct. 43, 589 A.2d 269 (1991).

In this case, claimant bears the burden of proving that he was misled by PSERS and that he justifiably relied on the PSERS misrepresentation. It is clear from the record that a clerical error was made in claimant's account by PSERS in 1975 and that the error was not corrected until after claimant had retired in 1991. This clerical error gave the appearance that claimant had 30 years of credited service at the end of the 1991 school

its instrumentalities and subdivisions. More specifically, the government cannot be subject to the acts of its agents and employees if those acts are outside the agent's powers, in violation of positive law, or acts that require legislative or executive action.

In *Finnegan,* this court held that, as a matter of law, the Board could not be estopped from asserting a statutory provision as set forth in the Retirement Code. To decide otherwise would be tantamount to giving employee errors the effect of amending the substance of a statute.

**6.** This court's scope of review of an order of the Board is limited to determining whether the Board committed an error of law, whether constitutional rights were violated or whether necessary factual findings are supported by substantial evidence. *Laurito v. Public School Employees' Retirement Board,* 146 Pa.Commonwealth Ct. 514, 606 A.2d 609 (1992).

year. However, the record also demonstrates that claimant knew or should have known that he did not have 30 years of credited service based upon his employment with the System. As such, there could have been no justifiable reliance.

Only if claimant had received full credit for the 30 school years from September 1961 through June 1991 would he have had enough service to qualify for special early retirement. Since claimant only had partial credit for the 1961–62 and 1965–66 school years, since he had not rendered any school service during the 1964–65 school year, and since he could calculate that there were exactly 30 school years between 1961 and 1991, claimant could not have *justifiably* relied upon representations and estimates from PSERS concerning his eligibility for special early retirement.

Claimant's awareness of the gaps in his service was evidenced by his efforts to purchase credit for the 1961–62, 1962–63 and 1963–64 school years. Claimant, however, was unable to purchase enough credits to eliminate the gaps in his service and to obtain a complete 30 years of service. By letter dated August 10, 1977, M. Andrew Sheffler, Acting Secretary of PSERS, informed claimant that he could not purchase credit for the time when he had not worked during the 1965–66 school year and that he could not purchase credit for service in the Pennsylvania National Guard because credit could only be purchased for active military service. (Original Record, Claimant's Exhibit 18). Claimant offered no evidence that he responded to Sheffler's instructions to advise PSERS if he had any active military service.

Based upon our review of the entire record, we conclude that claimant knew or should have known that he did not have 30 years of credited service with the System. As such, the Board did not err in concluding that claimant failed to sustain his burden of proving, by clear and convincing evidence, that he justifiably relied on PSERS misstatements regarding his credited years of service.[7]

■ Claimant next asserts that the Board's recalculation of his retirement benefits was an unconstitutional taking because the reduction in his benefits was so far below the percentage of his contributions. He argues that he has a constitutionally protected interest in at least 95% of his maximum annuity benefit since that was what he had contributed. We disagree.

■ PSERS is bound to follow the intent of the General Assembly in administering the provisions of the Retirement Code. 1 Pa. C.S. § 1921(a). This court has stated that in the PSERS, an employee has only those rights created by the Retirement Code, and none beyond it. *Bittenbender v. State Employees' Retirement Board*, 154 Pa.Commonwealth Ct. 11, 622 A.2d 403 (1992). If a beneficiary of the PSERS is receiving mistaken benefits, the Board is duty bound, under the Retirement Code, to correct the mistake. *Id.*; 24 Pa.C.S. § 8534(b).

■ In this case, the error in claimant's account was not discovered until after his account had been audited and recalculated following his retirement.[8] Once the error was discovered, claimant's monthly annuity was properly adjusted in accordance with the Retirement Code. Claimant is now receiving the retirement benefit to which he is entitled.

■ Claimant's property interest in his retirement benefits only extends to those retirement benefits to which he is legally entitled under the Retirement Code. Claimant was never entitled to a benefit based on an error in his retirement records. Accordingly, the Board did not err in concluding that the correction which was made to claimant's account was not an unconstitutional taking of claimant's property.

■ Claimant next argues that the invocation of his Fifth Amendment right against

---

7. Since we have concluded that claimant failed to meet all of the factual requisites for a showing of estoppel, we need not address the second issue raised by claimant on appeal as to whether the doctrine of equitable estoppel can be invoked against PSERS.

8. We note that PSERS did not have a duty to audit claimant's account and certify his creditable service until after he had retired and final salary and service information had been received from claimant's employer. 24 Pa.C.S. § 8505(g).

self-incrimination was improperly held against him by the Board. We disagree.

■ This court has stated that when a party claims the privilege against self-incrimination in a civil proceeding, an adverse inference may be drawn from that fact. *Frompovicz v. Workmen's Compensation Appeal Board (Palsgrove)*, 164 Pa.Commonwealth Ct. 307, 642 A.2d 638 (1994). While a party may choose to invoke the privilege against self-incrimination, it does not immunize the party from the potentially negative consequences of that choice in a civil proceeding. *Id.*

In its determination, the Board stated that it did not need to address the issue of the scope of claimant's Fifth Amendment rights at an administrative hearing. The hearing record alone, without claimant's testimony, was sufficient for the Board to reach its decision. The evidence suggested that claimant knew or should have known that he had less than 30 years of credited service. Even if, in rendering its decision, the Board had considered claimant's invocation of his Fifth Amendment privilege, the Board had the right to draw an adverse inference from claimant's failure to testify at the hearing. As such, the Board could decline to accept claimant's contention that he innocently and justifiably relied upon the alleged misrepresentations made by PSERS.

■ Finally, claimant asserts that the Board acted against public policy and fairness when it failed to fashion some equitable remedy for claimant after PSERS failed to correct its own errors upon their discovery. Claimant argues that correcting mistakes after members have retired penalizes members for their reliance on PSERS estimates and discourages PSERS from correcting mistakes.

■ We recognize that because PSERS does not audit a member's account and certify his creditable service until after the member has retired, a retiring member can be put in a difficult situation. However, PSERS must comply with the provisions of the Retirement Code. Section 8534(b) of the Retirement Code is a legislative directive to the Board to correct errors in its records, regardless of their intentional or unintentional nature, once they are discovered. We note that it is the province of our Legislature, and not this court, to address and correct unfairness which may result from PSERS actions.

The annual statements sent to each member provide the member with the information necessary for the member to review the accuracy of PSERS records. The burden is upon the member to be certain that PSERS records are accurate before the member retires. In this particular case, claimant should have known that PSERS records could not have been accurate given his lack of continuous service for 30 years and his inability to purchase enough credits to close all of the gaps in his service.

Accordingly, the order of the Board is affirmed.

### ORDER

NOW, this 21st day of July, 1995, the order of the Public School Employes' Retirement Board, dated November 10, 1994, is affirmed.