**Ronald J. MENTO, Petitioner**

v.

**PUBLIC SCHOOL EMPLOYEES' RETIREMENT SYSTEM, Respondent.**

Commonwealth Court of Pennsylvania.

Argued June 17, 2013.

Decided July 10, 2013.

Lynne L. Finnerty, Pittsburgh, for petitioner.

Jennifer A. Mills, Assistant Counsel, Harrisburg, for respondent.

BEFORE: LEAVITT, Judge, and COVEY, Judge, and FRIEDMAN, Senior Judge.

OPINION BY Judge COVEY.

Ronald J. Mento (Claimant) petitions this Court for review of the Public School Employees' Retirement Board's (Board) October 1, 2012 order granting Public School Employees' Retirement System's (PSERS) Summary Judgment Motion, denying Claimant's Summary Judgment Cross–Motion, and dismissing Claimant's Administrative Hearing Request. The sole issue before the Court is whether monies paid by the Montour School District (MSD) to Claimant in lieu of health insurance coverage constitutes compensation for purposes of computing final average salary under the Public School Employees' Retirement Code (Retirement Code).[1] We affirm.

The facts as set forth by the Board are undisputed. Claimant enrolled in PSERS effective September 1971. In April 2002, Claimant began employment with MSD as its Superintendent pursuant to a three-year employment contract. As part of his employment with MSD, Claimant elected to receive cash in lieu of health care coverage. In February 2004, MSD reported to PSERS that Claimant was on an unpaid leave of absence. MSD subsequently terminated Claimant's employment on February 19, 2004. On October 8, 2004, Claimant filed an Application for Retirement (Application) with PSERS electing an Option 3 survivor annuity and a total withdrawal of his accumulated deductions. In his Application, Claimant requested that his retirement date be delayed until September 17, 2004 to coincide with his 55th birthday. By October 18, 2004 letter, PSERS notified Claimant of his initial retirement benefit.

Based upon a Statement of Charges alleging Claimant's unprofessional conduct, an evidentiary hearing was held before

---

1. 24 Pa.C.S. §§ 8101—8535.

MSD's Board of School Directors (School Board). On November 18, 2004, pursuant to the School Board's Adjudication and Resolution, Claimant was removed as MSD's Superintendent. Claimant appealed from the School Board's Adjudication and Resolution to the Allegheny County Common Pleas Court (trial court). In a letter dated March 16, 2005, PSERS notified Claimant that his gross monthly retirement benefit as of September 17, 2004 was $6,064.35, based on 32.93 years of service and a final average salary of $110,500.00.

By October 30, 2006 Order, the trial court directed MSD to calculate monies due to Claimant assuming Claimant worked to the end of his contract, and then retired under the options available to him under his contract, or applicable law, and file the same with the trial court on or before November 15, 2006. Following the parties' submissions to the trial court, the trial court issued an Order on December 4, 2006 itemizing the specific amounts payable to Claimant.

The December 4, 2006 Order directed MSD to comply with the PSERS provisions in making Claimant whole with respect to his pension contributions. It further required Claimant to be placed on Sabbatical Leave for the 2004–2005 school year, and returned to normal work status for the 2005–2006 school year. In addition, PSERS was ordered to calculate the retirement benefits MSD must pay Claimant. In accordance with MSD and Claimant's contractual agreement and the MSD Act 93 Agreement,[2] MSD was also responsible for Claimant's health insurance coverage.

PSERS notified Claimant by September 28, 2007 letter that: (1) his gross monthly benefit was changed from $6,064.35 to $7,100.51 retroactive to his effective retirement date based on a revised final average salary of $115,047.00 and adjusted to 35.00 years of service; (2) his effective retirement date was changed from September 17, 2004 to June 30, 2006; and, (3) because his effective retirement date was altered to June 30, 2006, Claimant had been overpaid $114,400.62 in monthly annuity payments. In a letter dated November 28, 2007, PSERS notified Claimant that his monthly retirement benefit was recomputed with a permanent actuarial reduction of $644.45 per month to account for the amount Claimant was overpaid; thereby, reducing Claimant's gross monthly benefit from $7,100.51 to $6,456.06. In response to an inquiry from Claimant's counsel, in a September 6, 2008 letter, PSERS provided a detailed calculation of Claimant's adjusted retirement benefit.

By October 22, 2008 letter, Claimant's counsel questioned the salary amount PSERS used to calculate Claimant's final average salary. PSERS informed Claimant's counsel in a July 1, 2009 letter that payments made in lieu of health care coverage are not retirement-covered compensation as defined under the Retirement Code and were not used to calculate Claimant's final average salary. Claimant appealed from this decision to PSERS' Executive Staff Review Committee (Review Committee) to examine PSERS' determination that the $39,182.03 Claimant received in lieu of health insurance benefits was not retirement-covered compensation in calculating his final average salary. On August 29, 2011, the Review Committee denied Claimant's request to include the $39,182.03 as part of his compensation. The Review Committee ruled that payments received in lieu of health care cover-

---

**2.** The MSD Act 93 Agreement sets forth the wages, benefits and conditions of employment for MSD's educational administrative employees.

age are fringe benefits, which are specifically excluded from retirement-covered compensation under the Retirement Code.

■ On September 29, 2011, Claimant appealed from the Review Committee's decision to the Board and requested an administrative hearing seeking to include the $39,182.03 he received in lieu of health insurance coverage as part of his final average salary. On October 7, 2011, PSERS filed its Answer to Claimant's appeal and administrative hearing request. On May 31, 2012, PSERS filed a Motion for Summary Judgment. On July 2, 2012, Claimant filed his response to PSERS' Motion as well as a Cross–Motion for Summary Judgment. On July 30, 2012, PSERS filed a Memorandum in Opposition to Claimant's Cross–Motion. On October 1, 2012, the Board granted PSERS' Summary Judgment Motion, denied Claimant's Summary Judgment Cross–Motion, and dismissed Claimant's Administrative Hearing Request. Claimant appealed to this Court.[3]

■ Claimant argues that the money he received in lieu of health benefits was regular and ongoing compensation paid to him as MSD Superintendent and therefore was compensation in accordance with the Retirement Code. We disagree.

Section 8102 of the Retirement Code, 24 Pa.C.S. § 8102, defines "[f]inal average salary" as "[t]he highest average compensation received as an active member during any three nonoverlapping periods of 12 consecutive months...." Section 8102 of the Retirement Code also defines "[c]ompensation" as:

> Pickup contributions plus **any remuneration received as a school employee**

excluding reimbursements for expenses incidental to employment and **excluding any bonus, severance payments, any other remuneration or other emolument received by a school employee during his school service which is not based on the standard salary schedule under which he is rendering service,** payments for unused sick leave or vacation leave, bonuses or other compensation for attending school seminars and conventions, payments under health and welfare plans based on hours of employment or any other payment or emolument which may be provided for in a collective bargaining agreement which may be determined by the [Board] to be for the purpose of enhancing compensation as a factor in the determination of final average salary....

(Emphasis added). Article V, Section A of Claimant's employment contract specifically sets forth the following salary schedule:

1. The established annual salary shall be paid in twenty-four (24) equal installments over the twelve month period; and

2. The compensation of the Superintendent shall not be decreased during the term of this Contract, without the written approval of the Superintendent. This provision shall be applicable to annual salary and fringe benefit adjustments; and

3. The annual salary of the Superintendent for the first year of this Contract, i.e. July 1, 2002 (the date of commencement) through June 30, 2003 shall be $106,000; and

4. The salary of the Superintendent for the years July 1, 2003 through June 30, 2004 and July 1, 2004 through

**3.** "Our scope of review of an order granting or denying a motion for summary judgment is limited to determining whether the trial court, or in this case the Board, committed an error of law or abused its discretion." *Allen v. Pub. Sch. Emps. Ret. Bd.*, 848 A.2d 1031, 1033 n. 7 (Pa.Cmwlth.2004).

June 30, 2005 shall increase by a minimum of two (2%) percent in each year; and

5. The District shall annually review and may adjust the salary in excess of the amount of increase stated in subparagraph 2 above to an additional two (2%) percent based upon the Superintendent's evaluation and meeting of goals as set by the Board. Any salary increase, however, under this paragraph is discretionary and shall be determined on annually [sic] basis. The Superintendent, therefore, shall not be guaranteed said increases in the following years.

6. The District, in so annually adjusting the salary, shall not be considered to have entered into a new agreement with the Superintendent or to have extended the termination date of this Contract.

Reproduced Record (R.R.) at 62a–63a. Further, Article V, Section E of the contract provides:

> ***Payment in Lieu of Coverage.*** If the Superintendent elects not to have the medical coverage as set forth above, [MSD] shall pay him the sum equal to the cost of the premium as additional compensation. **This sum shall not be calculated as part of the base salary** for calculation of salary increases.

R.R. at 64a–65a (emphasis added). Claimant contends that the trial court's order specified that the Group Health Benefits payment made to Claimant was compensation under his employment contract in the amount of $39,182.03. However, the trial court's order merely enumerated the Group Health Benefits payment as an item due and owing from MSD to Claimant. Also included in the trial court's list of specific amounts due Claimant were vacation pay and sick day reimbursement which are expressly excluded from the definition of compensation in calculating final average salary. As PSERS correctly asserted, the trial court's order stated: "The retirement calculation will be completed by the [PSERS] and paid for by the [MSD]." R.R. at 10a–11 a.

■ The Board is charged with the execution and application of the Retirement Code, and the Board's interpretation should not be overturned unless it is clear that such construction is erroneous. *Panko v. Pub. Sch. Emps. Ret. Sys.*, 89 Pa. Cmwlth. 419, 492 A.2d 805 (1985). "The restrictive definitions of compensation under the Retirement Code and regulations reflect the Legislature's intention to preserve the actuarial integrity of the retirement fund by exclud[ing] from the computation of employes' final average salary all payments which may artificially inflate compensation for the purpose of enhancing retirement benefits." *Christiana v. Pub. Sch. Emps. Ret. Bd.*, 543 Pa. 132, 141, 669 A.2d 940, 944 (1996) (quotation marks omitted). "[A]n employee has only those rights created by the Retirement Code, and none beyond it." *Hughes v. Pub. Sch. Emps. Ret. Bd.*, 662 A.2d 701, 706 (Pa. Cmwlth.1995). While a member is entitled to liberal administration of the PSERS, "a liberal administration of the retirement system does not permit the [B]oard to circumvent the express language of the Code, which does not permit inclusion of a [health care benefit] in the computation of final average salary." *Dowler v. Pub. Sch. Emps. Ret. Bd.*, 153 Pa.Cmwlth. 109, 620 A.2d 639, 644 (1993). "PSERS is bound to follow the intent of the General Assembly in administering the provisions of the Retirement Code. 1 Pa.C.S. § 1921(a)." *Hughes*, 662 A.2d at 706.

Claimant had a choice to receive group health insurance or "the sum equal to the cost of the premium." R.R. at 64a. Had

Claimant elected health care coverage instead of payment for the medical insurance premium, he would not have received or been entitled to additional monies. Merely because Claimant chose the payments over the health insurance coverage does not convert the monies to compensation for determining final average salary.

The law and record evidence supports the Board's conclusion that the health care payment was not part of Claimant's standard salary schedule, but rather the $39,182.03 payment was a fringe benefit. Therefore, pursuant to the Retirement Code, the payment Claimant received in lieu of health coverage was properly excluded from his final average salary computation. Accordingly, the Board did not err or abuse its discretion in granting PSERS' Summary Judgment Motion.

For all of the above reasons, the Board's order is affirmed.

### ORDER

AND NOW, this 10th day of July, 2013, the Public School Employees' Retirement Board's October 1, 2012 order is affirmed.