# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Raymond J. Whalen,                          :
                    Petitioner              :
                                            :
          v.                                :
                                            :
Public School Employees'                    :
Retirement Board,                           :     No. 45 C.D. 2020
                    Respondent              :     Argued: September 15, 2020


BEFORE:   HONORABLE P. KEVIN BROBSON, Judge
          HONORABLE ANNE E. COVEY, Judge
          HONORABLE CHRISTINE FIZZANO CANNON, Judge

OPINION BY
JUDGE COVEY                                 FILED: October 27, 2020


Raymond J. Whalen (Whalen) petitions this Court for review of the Pennsylvania Public School Employees' Retirement Board's (Board) December 6, 2019 order granting the Public School Employees' Retirement System's (PSERS) Motion for Summary Judgment (Motion).[1] Essentially, the issue before this Court is whether the Board erred by determining that the money Whalen received in settlement of his age discrimination action did not constitute retirement-covered compensation (RCC) for purposes of calculating his final average salary (FAS).[2]

---

[1] The Board's order was mailed on December 12, 2019.

[2] Whalen presents six issues for this Court's review: Whether the Board erred by: (1) finding that Whalen's settlement amount did not constitute back pay for salary he should have received; (2) excluding, as prohibited parol evidence, Whalen's counterstatement of facts; (3) finding that Whalen did not establish a genuine issue of material fact as to whether the settlement amount represented actual pay he would have received had the alleged discrimination not occurred; (4) finding Whalen's receipt of salary enhancements progressing from July 1, 2014, is inconsistent with his position that the settlement amount constituted back pay because those payments were made with the now adjusted standard salary schedule and were in addition to the back pay; (5) relying on its decision in *Account of Robert Holder*, Docket No. 2016-20; and (6) failing to liberally administer the retirement system in favor of its members. *See* Whalen Br. at 5-6. These issues are subsumed in the issue identified by this Court and in its analysis herein.

Whalen was employed by the Wyoming Valley West School District (District) from July 1995 to September 24, 2014. He enrolled in PSERS in 1995 by virtue of his employment with the District. During the 2011-2012 school year, Whalen was paid $88,578.00. During the 2012-2013 school year, he was paid $89,616.90. During the 2013-2014 school year, he was paid $90,588.00.

On May 26, 2011, Whalen filed an age discrimination charge against the District with the Equal Employment Opportunity Commission (EEOC), wherein he averred that, in 2010, as the oldest principal in the District, he was excluded from pay raises awarded to other principals. Whalen sought compensation for his lost pay resulting from the alleged age discrimination.

On October 15, 2013, Whalen filed an age discrimination action in the United States District Court for the Middle District of Pennsylvania.[3] In his complaint, Whalen averred that his loss of compensation was due to the alleged age discrimination, and he sought, *inter alia*, back pay and compensatory damages. *See* Reproduced Record (R.R.) at 94a-100a. On October 17, 2013, he filed an amended complaint averring the same claim for relief. *See* R.R. at 102a-108a. On June 27, 2014, Whalen and the District agreed to settle the matter and executed a Settlement Agreement and Release (Settlement Agreement). The Settlement Agreement stated, in pertinent part:

> [Whalen], for and in consideration of payments and other good and valuable consideration . . . does, hereby remise, release, and forever discharge the [District] . . . of and from all, and all manner of, actions, causes of action, suits, claims . . . and any and all claims of whatever kind and nature whatsoever, arising out of or related to his employment . . . **especially pertaining to those claims and causes of action more specifically described in actions filed in the United States District Court for the Middle**

---

[3] *Whalen v. Wyoming Valley West School District*, Docket No. 3:13-CV-02571.

**District of Pennsylvania**, docketed to number **13-2571** [**seeking back pay for alleged age discrimination**] . . . .

IT IS AGREED AND UNDERSTOOD **that** [**the District**] **agrees to pay $15,000**[.**00**], **in the form of a salary enhancement** in full and final settlement of this matter to [Whalen] and $5,000[.00] in full and final settlement of attorney's fees and costs to [Whalen's] attorney . . . . [The District] will cause the salary enhancements to be made before the end of business on June 30, 2014, and will make such payment and withholdings as are required in the normal course of payroll payments. **It is the intent of the parties that this salary adjustment be income qualified for full pension credit by PSERS to be allocated to the year 2013-2014**.

IT IS AGREED AND UNDERSTOOD that [Whalen] will receive any and all entitlements he is currently entitled to under the Administrative Compensation Plan based upon a retirement date of September 24, 2014.

IT IS AGREED AND UNDERSTOOD that there is no warranty by [the District] as to how PSERS treats the salary enhancement set forth above for settlement.

IT IS AGREED AND UNDERSTOOD that [Whalen] will submit an irrevocable letter of retirement from his employment with the [] District to be effective September 24, 2014.

IT IS AGREED AND UNDERSTOOD that this is a full and final release of all claims of every nature and kind whatsoever and that it releases all claims for injuries, losses, and damages that are presently known or suspected and all claims for injuries, losses, and damages that are not presently known or suspected but which may later develop or be discovered.

IT IS AGREED AND UNDERSTOOD that the consideration paid in exchange for this release is not to be construed as an admission of liability on the part of the [District] herein, all liability being expressly denied, and that said payment is made to effect a compromise of a disputed claim.

. . . .

3

IT IS FURTHER AGREED AND UNDERSTOOD that this release contains the entire agreement between the parties hereto and that the terms of this release are contractual and not a mere recital.

R.R. at 60a-64a (emphasis added). Also on June 27, 2014, in accordance with the Settlement Agreement, Whalen signed a separate document irrevocably retiring from his District employment effective September 24, 2014. On June 30, 2014, the District paid Whalen $15,000.00.

On August 11, 2014, Whalen submitted an Application for Disability Retirement to PSERS. The District reported to PSERS that Whalen worked 62 total days from July 1 through September 24, 2014, and his total actual wages were $21,655.26, which annualized a $90,230.25 salary for the 2014-2015 school year. On September 24, 2014, Whalen retired. On September 26, 2014, PSERS notified Whalen that his disability retirement had been approved for one year. On January 30, 2015, PSERS provided Whalen with a Finalized Retirement Benefit letter that identified his FAS as $89,726.48, which excluded the $15,000.00 settlement payment.

On April 16, 2015, Whalen filed a nonadjudicatory benefit appeal with PSERS' Executive Staff Review Committee (ESRC) contending that the settlement payment should have been considered RCC for the 2013-2014 school year. On February 3, 2016, the ESRC denied Whalen's appeal, concluding that "[t]he $15,000[.00] settlement amounts to a damage award and does not represent your standard salary or back wages and benefits for the period at issue. PSERS cannot recognize a damage award as [RCC]." R.R. at 132a.

The ESRC explained:

In this case, your salary for the 2013-2014 school year was confirmed by [the District] to be $90,588.00. While the [Settlement] Agreement characterizes the $15,000.00 lump sum payment as a 'salary enhancement' to be allocated to

4

the 2013-2014 school year, you cannot receive retirement credit based on a salary that is higher than what you were to earn on the standard salary schedule. Moreover, it is well settled that the parties to an agreement cannot turn payments that are not 'compensation' under the [Public School Employees' Retirement Code (Retirement Code)[4]] into 'compensation' through the contractual language they use. Nor is PSERS bound by the language that was used in the [Settlement] Agreement. The $15,000.00 settlement amounts to a damage award and does not represent your standard salary or back wages and benefits for the period at issue. It is, therefore, not [RCC] that can be included in the calculation of your FAS, and your records have been corrected accordingly.

R.R. at 135a (citations omitted).

On March 4, 2016, Whalen filed an adjudicatory benefit appeal with the Board alleging that the $15,000.00 settlement should be included in his RCC for the 2013-2014 school year for FAS calculation purposes. *See* R.R. at 8a. On March 8, 2016, PSERS filed an answer to Whalen's appeal. On August 14, 2019, PSERS filed the Motion and a supporting memorandum of facts contending that, "[t]o constitute [a] valid RCC, a settlement agreement must identify the payment as lost wages and indicate when the lost wages would have been earned -- not received -- and the payment must represent the actual pay that would have been earned but for the adverse employment action[,]" R.R. at 41a, and accordingly, "the $15,000.00 payment to [Whalen] by the District was not compensation as defined by the Retirement Code. Rather, it was a payment made in exchange for a release of all claims by [Whalen] against the District and was made in conjunction with an irrevocable notice of retirement." R.R. at 47a.

On September 12, 2019, Whalen filed his response to the Motion, wherein he acknowledged that he did not dispute the facts in PSERS' memorandum,

---

[4] 24 Pa.C.S. §§ 8101-8547.

but he submitted a counterstatement of facts, a supporting affidavit and exhibits, and a brief wherein he asserted:

> 1. In [Whalen's] employment by the [District], he was a principal and an Act 93[5] administrator subject to the Administrative Compensation Plan of [the District].
>
> 2. The averments contained in [Whalen's] charge of age discrimination against [the District] with the [EEOC], filed on May 26, 2011, . . . are true and correct, as younger principals were awarded raises in 2010 ranging from $2,000.00 to $10,000.00 per year.
>
> 3. [The District] vigorously defended [Whalen's] claim of age discrimination, both before the EEOC and in the Federal District Court for the Middle District of Pennsylvania, where he had filed his claim under the Age Discrimination [i]n Employment Act (ADEA)[, 29 U.S.C. §§621-634.]
>
> 4. The statements asserted by John Freund, III, Esq[uire] [(Freund)], counsel for [the District], in his letter of July 8, 2014, implementing the [Settlement A]greement between [the District] and [Whalen] are true and correct. Specifically, the $15,000[.00] pay adjustment identified in [the Settlement A]greement was inclusive of [Whalen's] new rate of pay from July 1 to September 24[, 2014] based upon his new adjusted salary. . . .
>
> 5. The statement contained in the letter of Joe Rodriguez [(Rodriguez)], [the District's] Finance Manager, dated October 18, 2018, that the lump sum payment of $15,000[.00] received by [Whalen] was to be treated as back pay, was true and correct. . . .
>
> 6. The $15,000[.00] payment was intended to compensate [Whalen] for salary he should have received,

---

[5] Section 1164 of the Public School Code of 1949, Act of March 10, 1949, P.L. 30, *as amended*, 24 P.S. §§ 1-101 - 27-2702, added by the Act of June 29, 1984, P.L. 438, No. 93, 24 P.S. § 11-1164, "is commonly known as 'Act 93.' It provides for the compensation of school administrators through the adoption of a written compensation plan." *Wrazien v. Easton Area Sch. Dist.*, 926 A.2d 585, 590 n.7 (Pa. Cmwlth. 2007).

6

but did not, due to age discrimination, in the three years prior to the end of his employment with [the District].

      7. [Whalen's] salary loss was equivalent to the amount received by him by the [Settlement A]greement.

R.R. at 203a-205a (citations omitted). In his memorandum, Whalen contended that the District's $15,000.00 payment represented salary to which he was entitled and would have earned but for the age discrimination and, thus, it should be included in his FAS calculation.

On December 6, 2019, the Board granted the Motion, concluding that there were no material issues of disputed fact and, as a matter of law, "the $15,000[.00] payment to [Whalen] by the District was not 'compensation' as defined by the Retirement Code. Rather, it was a payment made in exchange for a release of all claims by [Whalen] against the District and was made in conjunction with an irrevocable notice of retirement." R.R. at 246a. Whalen appealed to this Court.[6]

Initially,

> [t]he Board is charged with the execution and application of the Retirement Code, and the Board's interpretation should not be overturned unless it is clear that such construction is erroneous. 'The restrictive definitions of compensation under the Retirement Code and regulations reflect the Legislature's intention to preserve the actuarial integrity of the retirement fund by exclud[ing] from the computation of employes' final average salary all payments which may artificially inflate compensation for the purpose of enhancing retirement benefits.' *Christiana v. Pub. Sch.*

---

[6] Our scope of review of an order granting or denying a motion for summary judgment is limited to determining whether the trial court, or in this case the Board, committed an error of law or abused its discretion. Summary judgment is only appropriate when, after examining the record in the light most favorable to the non-moving party, there is no genuine issue of material fact, and the moving party establishes that he is entitled to judgment as a matter of law.

*Allen v. Pub. Sch. Emps.' Ret. Bd.*, 848 A.2d 1031, 1033 n.7 (Pa. Cmwlth. 2004) (citation omitted).

*Emps.*[*']* *Ret. Bd.*, . . . 669 A.2d 940, 944 ([Pa.] 1996) (quotation marks omitted). '[A]n employee has only those rights created by the Retirement Code, and none beyond it.' *Hughes v. Pub. Sch. Emps.*[*']* *Ret. Bd.*, 662 A.2d 701, 706 (Pa. Cmwlth. 1995). While a member is entitled to liberal administration of [] PSERS, 'a liberal administration of the retirement system does not permit the [B]oard to circumvent the express language of the [Retirement] Code, which does not permit inclusion of a [severance payment] in the computation of final average salary.' *Dowler v. Pub. Sch. Emps.*[*']* *Ret. Bd.*, . . . 620 A.2d 639, 644 ([Pa. Cmwlth.] 1993). 'PSERS is bound to follow the intent of the General Assembly in administering the provisions of the Retirement Code. 1 Pa.C.S. § 1921(a).' *Hughes*, 662 A.2d at 706.

*Mento v. Pub. Sch. Emps.' Ret. Sys.*, 72 A.3d 809, 813 (Pa. Cmwlth. 2013) (citation omitted). The Pennsylvania Supreme Court has recognized:

To further [its responsibility to guarantee the actuarial soundness of the retirement fund], 'the Board has determined that it is statutorily required to exclude nonregular remuneration, *nonstandard salary*, fringe benefits, bonuses, and severance payments from inclusion as compensation under the Retirement Code. The Board has developed the concepts of 'standard salary' and 'regular remuneration' as part of its understanding of compensation.' *Christiana*, [669 A.2d] at 945 (emphasis added).

We agree the salaries not based on the standard salary schedule constitute an artificial inflation of compensation for purposes of retirement benefits calculations.

*Kirsch v. Pub. Sch. Emps.' Ret. Bd.*, 985 A.2d 671, 677 (Pa. 2009).

Section 8102 of the Retirement Code defines FAS, in pertinent part, as "the highest average compensation received as an active member during any three nonoverlapping periods of 12 consecutive months . . . ." 24 Pa.C.S. § 8102. The Retirement Code defines "compensation," in relevant part, as

**any remuneration** received as a school employee **excluding** reimbursements for expenses incidental to

8

employment and excluding any bonus, **severance payments**, **any other remuneration or other emolument** received by a school employee during his school service which is **not based on the standard salary schedule**[7] **under which he is rendering service**, payments for unused sick leave or vacation leave, bonuses or other compensation for attending school seminars and conventions, payments under health and welfare plans based on hours of employment or any other payment or emolument which may be provided for in a collective bargaining agreement which may be determined by the [Board] to be for the purpose of enhancing compensation as a factor in the determination of final average salary . . . .

24 Pa.C.S. § 8102 (emphasis added).

Whalen argues that the Board erred by finding, based on the Settlement Agreement's terms, that the District's $15,000.00 payment was not RCC.

This Court has explained:

A settlement agreement . . . is 'in essence a contract binding the parties thereto.' *Commonwealth v. U.S. Steel Corp.*, . . . 325 A.2d 324, 328 ([Pa. Cmwlth.] 1974) . . . . Accordingly, 'settlement agreements are governed by contract law principles.' *Lesko v. Frankford Hosp.-Bucks C[]ty.*, . . . 15 A.3d 337, 341-42 ([Pa.] 2011).

*Roe v. Pa. Game Comm'n*, 147 A.3d 1244, 1250 (Pa. Cmwlth. 2016). "The goal of contract interpretation is to ascertain and give effect to the parties' intent, as well as to all portions of the document." *Dick Enters., Inc. v. Dep't of Transp.*, 746 A.2d 1164, 1168 (Pa. Cmwlth. 2000); *see also Wert v. Manorcare of Carlisle PA, LLC*, 124 A.3d 1248, 1259 (Pa. 2015) ("A contract shall be interpreted in accordance with the parties' intent. When a written contract is clear and unambiguous, the parties' intent is contained in the writing itself." (Citation omitted)).

Here, the Board concluded that the Settlement Agreement is not ambiguous, but rather clearly establishes the parties' obligations. This Court agrees

---

[7] The Retirement Code does not define the term "standard salary schedule."

that the Settlement Agreement is unambiguous.[8]  Importantly, "unambiguous contracts are interpreted by the court as a matter of law, [while] ambiguous writings are interpreted by the finder of fact." *Ins. Adjustment Bureau, Inc. v. Allstate Ins. Co.*, 905 A.2d 462, 469 (Pa. 2006).  Thus, this Court interprets the Settlement Agreement as a matter of law.

Notwithstanding the Board's interpretation, the Settlement Agreement clearly reflects that the District's $15,000.00 payment was intended to be a part of Whalen's salary.  First, the Settlement Agreement specifically acknowledges it is in settlement of Whalen's age discrimination action wherein Whalen sought back pay for alleged discrimination that affected his compensation.  Further, the Settlement Agreement expressly provides that "[i]t [wa]s the intent of the parties that this salary adjustment be **income qualified for full pension credit** by PSERS to be allocated to the year 2013-2014." R.R. at 61a (emphasis added).

The Board acknowledges:

> Although the Retirement Code does not recognize settlement payments as RCC, the Board has followed this Court's jurisprudence and liberally construed the Retirement Code to allow **the constructive awarding of such amounts as RCC** when ordered by a court **for the purpose of upholding a member's contractual rights for a specified period**.  **This interpretation allows a member**, **who successfully challenges or settles an adverse employment action**, **to be made whole by allocating back**

---

[8] Whalen also argues in his brief that the Board improperly ruled that the parol evidence rule barred consideration of his counterstatement of facts and supporting exhibits.  "The parol evidence rule bars the admission of oral testimony which purports to explain or vary the terms of an integrated written agreement." *Green Valley Dry Cleaners, Inc. v. Westmoreland Cty. Indus. Dev. Corp.*, 832 A.2d 1143, 1154 (Pa. Cmwlth. 2003).  The law is well-established that "[w]here the terms of a contract are clearly expressed, interpretation of those terms must be determined from the language itself.  **Only where the language in a written contract is ambiguous may extrinsic or parol evidence be considered** to determine the intent of the parties." *Dep't of Transp. v. Brozzetti*, 684 A.2d 658, 663 (Pa. Cmwlth. 1996) (emphasis added; citation omitted).  Having found that the Settlement Agreement is not ambiguous, this Court need not address Whalen's argument.

**pay to the period when it was earned** while ensuring against potential windfalls.

Board Br. at 11 (emphasis added; citations omitted).

In concluding that the $15,000.00 salary enhancement was not RCC, the Board reasoned:

> The Settlement Agreement . . . fails to make any mention or reference to 'back pay' or 'lost wages.'[9]   Rather, the agreement classifies the lump sum $15,000[.00] payment to [Whalen] as a salary enhancement paid as a full and final settlement, to effect a compromise of a disputed claim. Moreover, the Settlement Agreement makes no reference to either the 2011-2012 or 2012-2013 school years.  Nor does the [Settlement] [A]greement identify when the salary enhancement was earned.  *See* 22 Pa. Code § 211.2(b) ('For final average salary purposes, retirement-covered compensation is credited in the school year in which it is earned, not paid.').   The Settlement Agreement specifies only that the salary enhancement [is] to be *made* before the end of business on June 30, 2014[,] and is intended to be *allocated* to the year 2013-2014.
>
> In addition, the Settlement Agreement does not reference or incorporate any salary schedule, and the undisputed facts establish that [Whalen's] wages were not increased by $15,000[.00] in the following school year (i.e., the 2014-2015 school year).  Thus, there is no evidence that would indicate the salary enhancement was to be anything other than a one-time payment, outside of [Whalen's] standard salary. [Whalen] argues for the first time, in response, that a portion of the $15,000[.00] settlement payment *included* monies for *future* salary during the period July 1, 2014 to September 24, 2014.  The plain and unambiguous terms of the Settlement Agreement, however, do not support that assertion.  Indeed, there is no mention of the 2014-2015 school year in the Settlement Agreement.   Moreover,

---

[9] Notably, there is nothing in the Retirement Code requiring a PSERS member to use the terms *back pay* or *lost wages* in a settlement agreement in order for settlement monies to constitute RCC.  Such terms are not *magical words*.  Ignoring the meaning of a settlement agreement based upon the omission of these terms would place form over substance and be contrary to the requirement that the retirement system be liberally administered.  *See Mento*.

11

> [Whalen's] assertion is inconsistent with his claim that the $15,000[.00] amount was intended to represent 'back pay.'

R.R. at 244a-245a (citations and quotation marks omitted).

Citing *Martsolf v. State Employees' Retirement Board*, 44 A.3d 94 (Pa. Cmwlth. 2012), the Board asserts that "[f]or a settlement payment to qualify as RCC for a particular school year, the amount awarded must represent the actual pay the member would have earned in that school year had the purported adverse employment action not occurred." Board Br. at 12.

In *Martsolf*, a Pennsylvania State Police (PSP) sergeant who had been selected as a sharpshooter for PSP's Special Emergency Response Team (SERT) was notified that he was being temporarily removed from his SERT position, which removal was later made permanent. Martsolf filed grievances from those removals seeking "all appropriate relief." *Martsolf*, 44 A.3d at 96. Thereafter, the PSP, the Pennsylvania State Troopers Association (PSTA), and Martsolf entered into a settlement agreement under which Martsolf would be reinstated to the SERT, but he would immediately and permanently resign. PSP also agreed to pay him a $40,000.00 lump sum settlement. Martsolf sought to treat the settlement payment as RCC, but the State Employees' Retirement System (SERS) denied that the settlement payment was "compensation" under the State Employees' Retirement Code (SERS Code),[10] and Martsolf appealed to the State Employees' Retirement Board (SERS Board).

> Martsolf testified before a hearing examiner that
>
> his compensation for his membership on [the] SERT was almost entirely overtime and was based on if - or when - the team was called out; that he was guaranteed at least three hours' pay for each call-out, regardless of how long it actually lasted; however, there was no guarantee as to how many hours of compensation he would receive annually as a

---

[10] 71 Pa.C.S. §§ 5101-5958.

12

> SERT member. . . . He grieved his temporary and then permanent removal and testified that to settle those grievances, he told the PSP's attorney that he [had] lost wages, **which were between $26,000[.00] and $29,000[.00] in his 'high year,' and after some discussion, they arrived at the $40,000[.00] figure**.

*Martsolf*, 44 A.3d at 95-96 (emphasis added; record citation omitted). Finding that Martsolf **did not specifically seek back pay**, **but rather**, **"all appropriate relief,"** *id.* at 96, and that bonuses or settlements are not generally considered RCC, the hearing examiner concluded:

> [T]he terms of the [a]greement were clear and unambiguous and did not support Martsolf's contention that the settlement payment was intended to be compensation under the [SERS] Code. She provided that the only support for Martsolf's contention was his own **testimony** that he was seeking lost wages, and while Martsolf may have wanted the payment to be counted as compensation, the [a]greement did not reflect that. The hearing examiner said that the parol evidence rule limited her to the terms of the [a]greement, and based on that review, the payment could not be considered compensation for SERS purposes. She recommended that Martsolf's request to receive pension credit for the payment be denied.

*Martsolf*, 44 A.3d at 97 (emphasis added). Martsolf filed exceptions with the SERS Board, challenging the hearing examiner's recommendations that the settlement payment should not be considered compensation. The SERS Board denied Martsolf's exceptions.

On review, this Court considered the relief Martsolf requested in his lawsuit and affirmed the SERS Board's decision, reasoning:

> **[I]n this case**, *the issue is whether the settlement payment is back pay and compensation under the* [*SERS*] *Code or some other 'appropriate relief.'* **Answering <u>that</u> question, unless a settlement agreement provides that wages lost are being compensated and for what periods, all that a settlement agreement indicates is that a grievance is being 'brought' and settled, nothing else**. The settlement

13

> agreement here is silent as to the basis of the award, and there is no way of determining whether any hours are connected to the payment, how many hours would be attached, and where to place the contribution in Martsolf's account.

*Martsolf*, 44 A.3d at 97-98 (bold, italic and underline emphasis added).[11]

*Martsolf* is clearly distinguishable from the instant matter. In *Martsolf*, Martsolf did not specifically seek back pay, but instead sought "[a]ll appropriate relief[,]" *id.* at 95, based on his removal from the SERT for which his compensation was almost entirely overtime and dependent upon if or when the team was called out, with no particular number of hours or annual compensation guaranteed. Here, Whalen's lawsuit **specifically sought back pay** resulting from the District's alleged discriminatory **failure to grant him raises to his fixed annual salary** where younger principals were awarded raises. In addition, the Whalen Settlement Agreement clearly describes the parties' intent that the payment was salary for the 2013-2014 school year, explaining that "[i]t is the intent of the parties that this salary adjustment be income qualified for full pension credit by PSERS to be allocated to the year 2013-2014." R.R. at 61a.

The Board complains that there is no proof that the settlement amount represented the actual pay Whalen would have earned in that school year had the purported adverse employment action not occurred. Nonetheless, the amount Whalen sought was for raises he was **not** awarded due to alleged age discrimination and, thus, the Settlement Agreement itself is evidence of the amount of actual pay he would have received during the 2013-2014 school year. Further, as Whalen alleged in his complaint, he was denied raises other District principals received. Given that

---

[11] The *Martsolf* Court announced the rule of law **specifically in the context of the facts of that case**. Unlike here, where Whalen explicitly sought "back pay" in the age discrimination action referenced in the Settlement Agreement, R.R. at 106a, 107a, Martsolf sought only "all appropriate relief." *Martsolf*, 44 A.3d at 96.

other similarly situated District principals allegedly received such raises in accordance with their contracts, acknowledging Whalen's payment as a comparable salary increase to cure the alleged age discrimination, is consistent with the Board's liberal construction of the Retirement Code "to allow the constructive awarding of such amounts as RCC . . . for the purpose of upholding a member's **contractual rights** for a specified period." Board Br. at 11 (emphasis added).

The Board also relies on *Laurito v. Public School Employees' Retirement Board*, 606 A.2d 609 (Pa. Cmwlth. 1992), to support its position. Therein, PSERS determined that a $16,000.00 salary adjustment for a school principal with 42 years of school district service did not constitute RCC, stating:

> Laurito's annual salary was negotiated each year with the school district. His salary for the 1984-1985 school year had been $32,600[.00]. On July 25, 1985, at a special meeting, the school board awarded Laurito a $16,000[.00] 'salary adjustment' resulting in setting his salary for the 1985-1986 school year at $48,600[.00]. The school board's minutes of July 25, 1985[,] reflect approval of the $16,000[.00] increase for the 1985-1986 school year. In addition, the same minutes also reflect approval of a leave of absence for Laurito for the 1985-1986 school year, as well as acceptance of Laurito's resignation for retirement purposes effective July 1, 1986.

*Laurito*, 606 A.2d at 609.

Laurito appealed from the determination to the Board for a hearing on that issue. After a hearing, the hearing examiner recommended that the $16,000.00 salary adjustment should be considered RCC. However, the Board rejected the hearing examiner's recommendation, concluding, instead, that the salary adjustment was a severance payment excluded from RCC.[12]

---

[12] "Whether or not a payment must be considered a severance payment is a question of law." *Dowler v. Pub. Sch. Emps.' Ret. Bd.*, 620 A.2d 639, 643 (Pa. Cmwlth. 1993). Relying on *Hoerner v. Public School Employees' Retirement Board*, 684 A.2d 112 (Pa. 1996), the Board also argues that the $15,000.00 is a severance payment. In *Hoerner*, a school superintendent entered into two

On appeal, this Court affirmed the Board's decision. Notably, this Court considered Laurito's testimony regarding his understanding of the purpose behind the salary adjustment.[13] Notwithstanding, the *Laurito* Court found

> [] especially persuasive the observation made by the [B]oard that the $16,000[.00] payment in the final year of service provided a mechanism for the school district to recognize [the principal's] devoted service, as well as to remedy the perceived inequity of a below-average salary throughout a working lifetime, by effectuating an inflated final salary for purposes of retirement benefits.

*Laurito*, 606 A.2d at 611-12.

In contrast to the facts in *Laurito*, here, the record evidence clearly reveals that the District's $15,000.00 payment was not to "recognize [Whalen's] devoted service" or to remedy a "below-average salary[.]" 606 A.2d at 611-12. Rather, it was to remedy alleged wrongful, discriminatory withholding of salary increases to which Whalen was entitled. Thus, *Laurito* is inapposite.

The Pennsylvania Supreme Court has held that, "as an independent administrative agency governed by statute, PSERS cannot be bound by characterizations of money payments made to a PSERS member pursuant to a private

---

termination agreements with school districts arising from contract disputes. PSERS informed him that the payments received thereunder were not RCC. The Pennsylvania Supreme Court held that "salary increases made **strictly pursuant to termination agreements** are tantamount to severance payments, such increases should not be used in calculating a party's final average salary for purposes of retirement benefits." *Id.* at 112 (emphasis added). Here, although the Settlement Agreement included the provision that Whalen would retire on a date certain, it was not a termination agreement. Rather, it was an agreement resolving the age discrimination lawsuit wherein Whalen sought back pay for the alleged discriminatory withholding of salary increases. Thus, *Hoerner* is inapposite.

[13] This Court notes that in both *Martsolf* and *Laurito*, the SERS Board, the Board and this Court considered the employees' testimony to be significant in determining whether the payments were RCC.

contractual settlement to which it is not a party."[14]  *Hoerner v. Pub. Sch. Emps.' Ret. Bd.*, 684 A.2d 112, 117 n.10 (Pa. 1996).  However, if, as the Board argues, it "has followed this Court's jurisprudence and liberally construed the Retirement Code to allow the constructive awarding of such amounts as RCC . . . for the purpose of upholding a member's contractual rights for a specified period[,]" Board Br. at 11, the Board must render a decision on whether such payment is RCC based on the evidence, and, in doing so, must review the Settlement Agreement to "ascertain and give effect to the parties' intent[.]" *Dick Enters., Inc.*, 746 A.2d at 1168.

In the instant matter, reading the Settlement Agreement as a whole, the provision that "[i]t is the intent of the parties that this salary adjustment be income qualified for full pension credit by PSERS to be allocated to the year 2013-2014[,]" is not a characterization but, rather, a clear expression of the parties' intent that the payment was what Whalen should have received as part of his salary and, thus, be credited to his pension.  R.R. at 61a.  The Settlement Agreement clearly expresses the parties' intent that the $15,000.00 payment was a salary enhancement **to resolve Whalen's claim for back pay**, and was to be RCC.  Therefore, this Court concludes, as a matter of law, that the Board should have treated the District's $15,000.00 payment as RCC.  Accordingly, the Board erred by granting the Motion.

Given that PSERS maintained there was no genuine issue of material fact, that Whalen agreed to PSERS' statement of facts, and this Court's conclusion that as a matter of law the Settlement Agreement is unambiguous, clearly revealing

---

[14] Although the Board may not be bound by such characterizations in a private contractual settlement, those characterizations may reflect the intent of the contracting parties and thus the true nature of such payments.

that the parties intended the $15,000.00 payment to be back pay and, thus, RCC, the Board's order is reversed.

_____

ANNE E. COVEY, Judge

18

## IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Raymond J. Whalen,             :
                  Petitioner      :
                                     :
          v.                          :
                                     :
Public School Employees'     :
Retirement Board,           :    No. 45 C.D. 2020
                  Respondent    :

## O R D E R

AND NOW, this 27th day of October, 2020, the Public School Employees' Retirement Board's December 6, 2019 order is reversed.

_____
ANNE E. COVEY, Judge